FIDELITY MUTUAL LIFE INSURANCE COMPANY *v.* CLICK.

Opinion delivered November 15, 1909.

1.  INSURANCE—PAYMENT—RECEIPT AS EVIDENCE.—A receipt for the payment of an insurance premium is merely *prima facie* evidence, which may be overcome by testimony showing that no payment was made. (Page 165.)

2.  SAME—RECEIPT OF PREMIUM—REBUTTAL.—Where a life insurance company, sued upon a policy of insurance, seeks to rebut its receipt for an annual premium by proof that such receipt was delivered under a mistake of fact, but fails to explain why such mistake was never discovered for three years after it was delivered and until after the death of the policy holder, such rebuttal presents such an unusual and unreasonable story as raises a question of fact for the jury to determine whether it should be credited.   (Page 166.)

Appead from Howard Circuit Court; *James S. Steel,* Judge; affirmed.

*W. C. Rodgers* and *Rose, Hemingway, Cantrell & Loughborough,* for appellant.

The sole issue is, was the third annual premium paid? The appellee relies upon a receipt for that premium unfortified by any other proof. The receipt alone was only *prima facie* proof of payment. The evidence on the part of appellant is clear and uncontradicted that this receipt was issued by mistake, and that this premium was never paid. This testimony was consistent and reasonable throughout. 84 Ark. 368; 53 Ark. 96; 67 Ark. 514; 78 Ark. 234; 80 Ark. 396; 81 Ark. 368; *Id.* 405; 84 Ark. 333; 86 Ark. 465; 87 Ark. 70; 84 Ark. 368.

*W. P. Feazel,* for appellee.

HART, J. This is an appeal by the Fidelity Mutual Life Insurance Company from a judgment rendered against it in favor of Mary E. Click for $2,000 on a life insurance policy. The case turns on the payment of the third annual premium. If this premium was not paid, it is conceded that the policy sued on was void, and that appellee should not recover. On the other hand, if this premium was paid, the policy was in force at the death of the assured, and the appellee should recover.

To show payment, the appellee relied upon the following receipt:

"The Fidelity Mutual Life Insurance Company of Philadelphia received $62.16 for annual premium due September 18, 1905, subject to conditions indorsed hereon, under policy of life insurance indicated by number and name.

"L. G. Fouse, President.
"O. C. Bosbyshell, Treasurer.

"David E. Click, Mineral Springs, Howard County, Ark. ELP 140593. Countersigned at Little Rock, Ark, on the 23d

day of October, 1905.

"R. C. Bright, Cashier."

The above was the receipt for the third annual premium. The policy provided that after three years premiums had been paid it could be automatically extended for four years and seven months without any further payment. The assured died in August, 1908.

The defendants thereupon introduced the following testimony to sustain their defense: O. C. Bosbyshell: "I was the treasurer of the defendant Fidelity Mutual Life Insurance Company during the years 1903 to 1906, inclusive. My duties were to receive and receipt for all premiums paid upon policies of insurance issued by said defendant. The third annual premium upon the said policy in suit in this action was never paid to defendant, Fidelity Mutual Life Insurance Company. Although said premium was never paid to said defendant, I wrote and mailed to the cashier at said defendant's office in the city of Little Rock, Ark., a letter directing said cashier to countersign and deliver to the insured under said policy a receipt for such third annual premium; said letter was so sent because of a clerical error made by one of the employees of the defendant insurance company in mistaking the record of the payment of the premium on another policy which had been paid for the premium on the policy in controversy, this record being on a line of the books immediately next to the record of the policy in controversy; and the mistake was made in losing the proper line when running it out for any payments, and thereby a payment on another policy was mistaken for the third annual payment on the policy sued on. Said letter was erroneous, and said receipt should not have been countersigned and delivered by said cashier, as said premium had not been received by defendant insurance company, as stated in said receipt."

William L. Hunter: "I am the employee of the defendant, the Fidelity Mutual Life Insurance Company, who made the clerical error referred to in the testimony of O. C. Bosbyshell. The third annual premium was not paid to the defendant insurance company."

Francis V. Shannon: "I was the bookkeeper employed by the defendant, Fidelity Mutual Life Insurance Company, at its

Little Rock office, at the time the letter referred to in the testimony of O. C. Bosbyshell was written and mailed to the Little Rock office by him. Said letter was received by me, and, as instructed therein, I countersigned and mailed to David E. Click the official receipt for the third annual premium upon the policy in suit. Said premium was not paid to or received by me at any time. Said receipt was not issued because the said premium was paid, but was so countersigned and mailed by witness because of the letter mentioned from O. C. Bosbyshell, and for no other reason."

It is not contended that the third annual premium was paid unless the receipt itself is sufficient to establish that fact. It is conceded that the receipt only makes a *prima facie* case, which may be overcome by testimony of witnesses, unimpeached, uncontradicted, reasonable and consistent in itself; and such is the rule recognized and followed by this court. *Industrial Mutual Indemnity Co.* v. *Perkins,* 87 Ark. 70; *Southern Express Co.* v. *Hill,* 84 Ark. 368, and cases cited.

We think the evidence on the part of the appellant overthrew the *prima facie* case made by the delivery of the receipt. The receipt was countersigned at Little Rock and mailed to the assured because the officers of the company there received an express order to that effect. That order was given because a clerk in the home office, whose duty it was to make up from the records of the company a list of premiums paid, by mistake reported the books as showing that this premium was paid when in fact such was not the case. The testimony plainly showed that the receipt was issued and delivered by mistake.

Counsel for appellee insists that the explanation is not reasonable and consistent, because the mistake was made in October, 1905, and no attempt was made to show why it was not discovered before the death of the assured, which did not occur until nearly three years later. But it is not shown that the appellant would have been likely to have discovered the mistake. Indeed, it seems unlikely that the company, considering the magnitude of its business, should have discovered it unless there had been occasion for further examination of the records of payment of premiums in regard to this policy, which does not appear to have been necessary.

Under the testimony as disclosed by the record, the court should have directed a verdict for the defendant. Therefore the judgment is reversed, and the cause remanded for a new trial.

ON REHEARING.

Opinion delivered December 20, 1909.

McCulloch, C. J. The introduction of the receipt, in regular form, properly signed and countersigned by those authorized to do so, raised a presumption of payment with the terms of the receipt, and cast upon appellant the burden of overcoming this presumption by affirmative proof of nonpayment. Appellee introduced no other proof of payment, and perhaps had none, as the person shown by the face of the receipt to have made the payment was then dead, and the receipt was executed nearly three years prior to his death. She rested merely on the presumption of payment raised by the receipt. This presumption reached to every available mode of payment, and in order to overcome it the burden was on appellant to close up by affirmative proof every avenue through which payment could have been made. Appellant's witnesses attempt to show that the receipt was executed and delivered by mistake. They do not pretend to know or to state from personal recollection that the premium could not have been paid to some other authorized agent of the company. Those who testified could not have known that payment was not made to some other agent. They merely attempted to show that they did not receive payment, and that the receipt was executed and delivered through mistake. The explanation given of the alleged mistake is that the record of another policy was "on a line of the book immediately next to the record of the policy in controversy, and the mistake was made in losing the proper line when running it out for any payments, and thereby a payment on another policy was mistaken for the third annual payment on the policy sued on." The witness who so testified did not make the error himself, but he says it was made by another employee. That other employee does not give any explanation of it, but merely says that he is the one who made the error referred to, and that no payment was ever made. Neither explain why the error was never detected and an effort made to recall the receipt. It would appear to be quite unusual for a receipt to

be executed and mailed out without some entry being made on the cash book or other book evidencing the daily receipt or remittances. It is a matter of common knowledge that in fairly well regulated business institutions of any considerable magnitude an accurate system of bookkeeping is practiced whereby there is a corresponding debit entered for each credit, and *vice versa.* The accounts should balance at all times, and a discrepancy will necessarily discover itself to a competent bookkeeper or accountant. It need not be assumed that appellant, in the operation of its business, practiced the usual accurate methods of keeping accounts, but the suggestion of such a glaring mistake and the failure to detect it for so long a time calls for some explanation. The fact that for nearly three years after the delivery of this receipt the alleged mistake was not detected, or, if detected, that no effort was made to recall the receipt—the fact that nothing was said about the alleged mistake until after the death of the policy holder, is significant and raises some doubt about the correctness of the statement of the witnesses. To use the language of this court in a case quite similar to this, "it presents an unusual, if not unreasonable story," and makes a question of fact for the jury to determine whether or not it should be credited. *Industrial Mut. Indemnity Co.* v. *Perkins,* 81 Ark. 87.

The decisions of this court in *Southern Express Co.* v. *Hill,* 84 Ark. 368, and *Industrial Mut. Indemnity Co.* v. *Perkins,* 87 Ark. 70, where the testimony of witnesses was found to be uncontradicted, reasonable and consistent, should not, we think, be held to control the decision in the present case, when we conclude that the testimony given by the witnesses in contradiction of the receipt is not reasonable and consistent, or at least when we can see that the jury could have regarded it as unreasonable.

It is true that these witnesses were not examined, but an admission as to what they would testify was read to the jury in order to obviate postponement of the trial. They might, if examined and cross-examined, have given a more reasonable explanation of the transaction. We must, however, assume that the statements of their testimony, prepared by counsel for appellant, contained all that the witnesses would say on examination.

A careful re-examination of the evidence introduced convinces a majority of the court that it presented a disputed issue

of fact, which was properly submitted to the jury. A rehearing is therefore granted, and the judgment is affirmed.

BATTLE and HART, JJ., dissent.