**FIRST TEXAS PRUDENTIAL INS. CO. v. SMALLWOOD et al.    (No. 813.)**

(Court of Civil Appeals of Texas. Beaumont. May 31, 1922.)

1. **Insurance ⬥133(1)—In combined life and accident policy, provision for payment of smaller amount for death from illness held not invalidated by statute prohibiting provisions for settlement at maturity of less value than amounts insured on the face of the policy.**

Combination life, accident, or health policy issued under Rev. St. 1911, art. 4762, provided that on insured's death from illness the insurer would pay "in lieu of all other indemnity a sum equal to 15 times the weekly benefit provided in schedule below, but not exceeding $150." In another clause it specified the indemnity for death or disability from accident as the "principal sum." In the schedule referred to the weekly benefit was shown as $5 and the "principal sum" as $150. *Held*, that the provision for payment of a sum equal to 15 times the weekly benefit, or $75, was not invalidated by section 4742, subd. 3, prohibiting a provision for any mode of settlement at maturity of less

value than the "amounts insured on the face of the policy"; the "amounts insured on the face of the policy" being both the $75 for death from illness and $150 for accidental death or disability.

2. **Insurance ⬥602—Insurer not liable for attorney's fee and penalty for refusal to pay loss demanded where amount demanded was in excess of that due.**

Under Rev. St. 1911, art. 4746, requiring insurer who fails, on demand, to pay the loss, to pay specified penalty and a reasonable attorney's fee, an insurer was not liable for such penalty and attorney's fee where the amount demanded was in excess of that subsequently ascertained to be due.

3. **Damages ⬥71 — Penalties ⬥3 — Litigant not subject to penalty or liable to payment of attorney's fee because of refusal of claim in absence of statute clearly imposing such liability.**

A party is not subject to a penalty or liable for payment of an attorney's fee because of refusal or failure to pay adversary's claim on demand therefor, in the absence of a statute, from the language of which it is reasonably certain that the Legislature intended to impose such liability.

4. **Constitutional law ⬥48—Exercise of police power not reviewed except where clearly unreasonable and arbitrary.**

The exercise of the police power of a state will not be reviewed by the judiciary except where the exercise of the power is clearly unreasonable and arbitrary.

5. **Constitutional law ⬥48—Construed so as to render it constitutional if one construction will make it constitutional and other construction to which it is subject will make it unconstitutional.**

If a statute is subject to two constructions, one of which will render it in violation of Const. U. S. Amend. 14, and the other of which would make it constitutional, that construction which will make the act valid will be given it.

Appeal from Harris County Court; Roy F. Campbell, Judge.

Suit by Ollie Smallwood and another against the First Texas Prudential Insurance Company. Judgment for plaintiffs, and defendant appeals. Reformed and affirmed.

Baker, Botts, Parker & Garwood and Y. D. Mathes, all of Houston, for appellant.

Fred R. Switzer, of Houston, for appellees.

HIGHTOWER, C. J. The appellee Ollie Smallwood, joined pro forma by her husband, Simon Smallwood, filed this suit in the county court at law of Harris county against appellant to recover $150 claimed to be due her under the terms of an insurance policy issued by the First Texas State Insurance Company to Carrie Brown on November 14, 1910. Appellee also prayed for penalty of

12 per cent. because of the refusal of appellant to pay her the amount she claimed to be due under the policy, the amount of such penalty being $18; and also she prayed that she be allowed a reasonable attorney's fee, which she alleged to be $75.

The allegations of appellee's petition were, substantially, that Carrie Brown was appellee's grandmother, and that appellee was the beneficiary named in the policy, her name at that time being Ollie Reynolds; that her grandmother, Carrie Brown, in consideration for the issuance of the policy, contracted and agreed to pay the insurance company issuing same 25 cents per week during the life of the policy; that as long as she lived, Carrie Brown complied fully with the terms of the policy and paid the weekly premiums as they accrued until the date of her death of July 27, 1920; that upon the death of Carrie Brown proper proof thereof was furnished appellant, who, in the meantime, had changed its corporate name and was bound and obligated to pay the loss that had accrued under the terms of the policy, and that appellant had declined to recognize its liability under the policy, and declined to pay the same; that by the terms of the policy appellant was bound and obligated to pay appellee the principal sum of $150, which was the amount stated to be due her on the face of the policy, with 6 per cent. interest thereon from September 1, 1920; that more than 30 days prior to the filing of this suit appellee made written demand of appellant for said sum of $150, but that appellant refused said demand, and denied any liability to appellee in any sum, and that by reason of such refusal to pay and denial of liability, after such written demand, appellant had become liable to pay appellee, not only the principal sum of $150 as demanded, but 12 per cent. thereof as a penalty for its refusal to pay same, together with a reasonable attorney's fee, which she alleged to be $75.

Appellant answered by general demurrer, general denial, and specially pleaded that it was not liable to appellee for any amount under the terms of the policy, for the reason that the policy was procured by Carrie Brown by false and fraudulent misrepresentations of fact, in that she represented to the company issuing the policy that she was only 44 years of age at the time she applied for the policy, but that, in fact, she was 67 years of age at the time, and that the company was induced by such false and fraudulent misrepresentations to issue said policy for a much smaller premium than it would otherwise have charged; and that therefore it was not liable to appellee in any sum, etc. There were other special pleas, unnecessary to mention.

The case was tried to the court without a jury, and resulted in a judgment in favor of the appellee against appellant for $150 as the principal sum due on the face of the policy, and 12 per cent. as a penalty, amounting to $18, and for an attorney's fee of $50, making a total of $218, together with interest on such total from the date of the trial until paid, at the rate of 6 per cent. per annum, and all costs of suit; from which judgment an appeal was prosecuted to the Court of Civil Appeals for the First Supreme Judicial District, and by order of the Supreme Court the cause was transferred to this court.

Several assignments of error are found in appellant's brief, but the disposition of two contentions made by it will dispose of them all.

The original policy issued by the First Texas State Insurance Company to Carrie Brown accompanies the statement of facts in this case, and the material portions of the same are as follows:

Old Line Stock Company Incorporated under the Laws of the State of Texas.

First Texas State Insurance Company.

In consideration of the weekly premium stated in the schedule below, which it is agreed shall be paid in advance to the company or its authorized representative, on or before every Monday during the continuance of this contract, hereby insures the person designated herein as insured, subject to the conditions, privileges and provisions contained on this and the second page hereon, which are hereby made a part of this contract, viz.:

(a) Against death and disability from any bodily disease or sickness, said bodily disease or sickness being hereinafter referred to as "such illness," and if death of insured shall occur while this policy is in force, resulting alone from 'such illness,' the company will pay in lieu of all other indemnity, a sum equal to fifteen times the weekly benefit provided in schedule below, but not exceeding one hundred and fifty dollars.

(b) Against death, dismemberment and disability caused from the effects resulting directly or exclusively of all other causes from bodily injury sustained solely through external, violent and accidental means, said bodily injury being hereinafter referred to as "such injury," the company will pay, in lieu of any other indemnity for—

Loss of life......................Principal sum
Both eyes.......................Principal sum
Both hands......................Principal sum
Both feet.......................Principal sum
One eye and one foot.........Principal sum
One eye and one hand.........Principal sum
One hand and one foot........Principal sum
One leg..........Three-fourths principal sum
One arm.........Three-fourths principal sum
One hand..............One-half principal sum
One eye...............One-third principal sum
One foot..............One-half principal sum

Such losses shall be construed to mean, in case of a hand or foot, complete severance at or above the wrist or ankle, in case of leg or arm, complete severance above knee or elbow, and in case of eye or eyes the entire and irrecoverable loss of the sight thereof.

. Weekly Benefits.

(c) If the insured, while this policy is in force shall, alone from "such illness" or "such injury" be necessarily, wholly and continuously disabled and prevented from performing any and every duty and thing pertaining to any work, business or occupation, the company will pay at the rate per week provided in schedule below for weekly benefits, subject to the provisions and conditions in clauses 8 and 9 on second page hereof.

from date of the judgment herein, May 9, 1921, until paid."

By proper assignments of error appellant attacks the second, third, and fourth conclusions of law made by the trial court. One of the assignments of error, presented as a proposition, is as follows:

"Since the policy of insurance in question plainly provides on its face for two different

Schedule Above Referred to.

| Name of Insured. | Age. | Weekly Premium. | Weekly Benefits. | Principal Sum. | Beneficiary. | Relation. |
|---|---|---|---|---|---|---|
| Carrie Brown | 44 | 25cts. | $5.00 | $150.00 | Ollie Reynolds | Niece |

The trial court filed findings of fact and conclusions of law, the findings of fact being, substantially, as follows:

That the policy above copied was issued to Carrie Brown on November 14, 1910; that the First Texas State Insurance Company, on March 20, 1917, changed its corporate name to First Texas Prudential Insurance Company, and that the latter company became and is liable to carry out the provisions of said contract; that Carrie Brown died July 27, 1920, from natural causes, and not from any accident; that the appellee, Ollie Smallwood, is the granddaughter of Carrie Brown, and that she is the same person named as the beneficiary in the policy; that at the time of her death, Carrie Brown had paid all sums and premiums due the insurance company in accordance with the provisions of the contract; that proper proofs of death were furnished the insurance company; that more than 30 days before the filing of this suit appellee made demand in writing of appellant for the $150 claimed by appellee to be due on the policy, but that defendant never paid the same or any part thereof; that $50 would be a reasonable fee to allow appellee's attorney in this case; that the following amounts were due by appellant to appellee: Amount of insurance $150, penalty $18, and attorney's fee, $50, making a total of 218.

The conclusions of law were as follows:

"1. That the policy of insurance in question is a combination accident, health and life insurance policy.

"2. That the amount insured on the face of the policy for the loss of life of the insured from any cause was the sum of $150.

"3. That the provision in the policy providing for a mode of settlement amounting to less than $150 is a provision for a mode of settlement at maturity of the policy of less value than the amounts insured on the face of the policy, and is in violation of Article 4742 of the Revised Statutes of this state and is not valid.

"4. That the defendant is liable to plaintiff in the sum of $150, the amount of insurance mentioned on the face of said policy, and $18 penalty thereon as provided by law, and the further sum of $50 attorney's fee, all of which shall bear interest at the rate of 6% per annum

amounts payable in the event of death, one amount being payable if the death results from illness and the other being payable if the death results from violent, external and accidental means, the trial court erred in concluding, as a matter of law, that 'the amount insured on the face of the policy for the loss of life of the insured from any cause was the sum of $150.' "

After very careful consideration of this assignment, we have reached the conclusion that it must be sustained. We cannot agree with the trial court that—

"The amount insured on the face of the policy for the loss of life of the insured from any cause was the sum of $150."

After stating that the policy is issued in consideration of the weekly premium of 25 cents, subject to the provisions thereof to follow, the very first clause of the policy, which is clause (a), reads:

"Against death and disability from any bodily disease or sickness, said bodily disease or sickness being hereinafter referred to as 'such illness,' and if death of insured shall occur while this policy is in force, resulting alone from 'such illness,' the company will pay in lieu of all other indemnity, a sum equal to fifteen times the weekly benefit provided in schedule below but not exceeding one hundred and fifty dollars."

Appellee's contention, by way of counter proposition to the assignment under consideration, is, substantially, that the trial court correctly held that $150 was the only amount of insurance stated on the face of the policy to be paid upon the death of Carrie Brown, regardless of the cause of her death, and that therefore appellant's contention to the effect that only 15 times the weekly benefits provided for in the policy aggregating $75, was the amount for which appellant was liable, in view of the undisputed proof that Carrie Brown died from natural causes and not from any accident, cannot be sustained, because to sustain such contention would be giving effect to a provision of the policy which is in conflict with and prohibited by article 4742 of the Revised Statutes of this state.

Subdivision 3 of article 4742 of the Revised Statutes of 1911 provides that no policy of life insurance shall be issued or delivered in this state, or be issued by a life insurance company incorporated under the laws of this state, if it contains—

"A provision for any mode of settlement at maturity of less value than the amounts insured on the face of the policy, plus dividend additions, if any, less any indebtedness to the company on the policy, and less any premium that may, by the terms of the policy, be deducted; provided, that any company may issue a policy promising a benefit less than the full benefit in case at the death of the insured by his own hand while sane or insane, or by the following stated hazardous occupations."

[1] Of course, if appellee's construction of the policy in question be correct, that is to say, if the only "amount" insured on the face of this policy was $150, and that amount was promised to be paid upon the death of Carrie Brown, however caused, then, certainly, appellee's contention that no subsequent condition or limitation found elsewhere in the policy, providing for the payment of a less sum than $150 upon the death of the insured, could be given effect, for the reason that to do so would be to ignore the positive and mandatory provision of subdivision 3 of article 4742, above quoted, which clearly prohibits any provision in a life insurance policy for any mode of settlement at maturity of less value than the "amounts" insured on the face of the policy, with the exceptions, etc., mentioned. But the question to be determined in this case is: What is the "amount" or what are the "amounts" insured on the face of this policy, and which the insurance company bound itself and promised to pay upon the death of Carrie Brown? It seems clear to us, from a careful reading of the very first clause (clause a) of the policy in question, that $150 is not the only "amount" stated on the face of the policy to be payable on the death of Carrie Brown, but, on the contrary, the clear provision of that clause is that if her death or disability be caused by any bodily disease or sickness, and if such bodily disease or sickness be the sole cause of her death, then the company obligated itself to pay, in lieu of all other indemnity, a sum of money equal to 15 times the weekly benefit provided for by the contract, as shown by a schedule following, which was expressly referred to, but the amount should not exceed, in any event, $150. Counsel for appellee contends that this clause (clause a) constitutes an express promise by the company to pay to the named beneficiary, on the death of Carrie Brown, however caused, $150. Clearly, such contention is not correct. On the contrary, the promise is to pay on Carrie Brown's death, if such death be the result of natural causes, only a sum of money equal to 15 times $5, amounting to $75, as clearly shown by the schedule express-

ly referred to as the "schedule below." Next after clause (a) follows immediately clause (b), and then immediately follows clause (c) of the policy, both of which we have quoted in full above. It will be seen by a careful reading of these clauses of the policy that by neither of them does the company promise absolutely to pay to the named beneficiary on the death of Carrie Brown $150, regardless of the cause of such death; but the promise, as contained in clause (b), is that if such death should be caused from the effects resulting directly or exclusively of all other causes from injuries sustained solely through external, violent, and accidental means, within 90 days from the date of such injury, then the company would pay to the beneficiary the "principal sum," by which was meant $150, as shown by the schedule which we have quoted above.

Appellant in this case was incorporated as a life, accident, and health insurance company, and issued the policy here in question with the permit and approval of the insurance commissioner of this state. Article 4762 of the Revised Statutes of this state reads as follows:

"Companies may be incorporated in the manner prescribed by this chapter for the incorporation of life, accident and health insurance companies generally, which shall have power only to transact business within the state of Texas, and to write insurance only on the weekly or monthly premiums plan, and to issue no policy promising to pay more than one thousand dollars in the event of death of the insured from natural causes, nor more than two thousand dollars in the event of death of any person from accidental causes, which may issue, combined or separately, life, accident or health insurance policies, with not less than an actual paid up capital of twenty-five thousand dollars; provided, that all such companies shall be subject to all the laws regulating life insurance companies in this state not inconsistent with the provisions of this article; and provided, further, that such companies shall not be permitted to invest their assets in other than Texas securities as defined by the laws of this state regulating the investments of life insurance companies."

It is clear from a reading of the above article that the law permits an insurance company such as appellant to issue a combination policy such as the one in question, and more than one "amount" may be named or stated on the face of the policy as being payable upon the death of the insured resulting from different causes; for it is clearly provided in the article just quoted that a company such as appellant may issue a policy like the one in question, by the terms of which it may bind itself to pay a sum of money not in excess of $1,000 upon the death of the insured resulting from natural causes, and not in excess of $2,000 in the event of death of the insured from accidental causes. Therefore, if it might be said, con-

sidering the policy in question in its entirety, that more than one amount is stated upon the face of the policy to be payable upon the death of Carrie Brown, the amounts payable depending upon the cause of such death, nevertheless such provision would be clearly authorized by the express language of the statute, and the contract as a whole, as made by the parties, should be enforced, unless some provision thereof should be in violation of or prohibited by some other provision of the statute.

The trial court correctly concluded, as a matter of law, that the policy in question is a combination accident, health, and life insurance policy. But the trial court further concluded, as a matter of law, that "the amount insured on the face of the policy" was the sum of $150; and further concluded, as a matter of law, that the provision in the policy, as contained in the first clause thereof, to the effect that if the death of Carrie Brown should result from natural causes, and not from some accidental cause, the company would only be liable for a sum of money equal to 15 times the weekly benefit provided for in the policy, as shown by the schedule of benefits, which schedule was expressly referred to in said first clause, was, in effect, a provision for a mode of settlement amounting to less than $150 at maturity of the policy, and that therefore such provision was in violation of article 4742 of the Revised Statutes of this state, and could not be given effect. · In these legal conclusions, we think it is clear that the trial court was in error.

We are not aware of any decision by any appellate court of this state in which the character and form of the policy here in question was under consideration, and therefore we have reached our conclusions without the aid or light of any precedent in passing upon the provisions and effect of the policy in question. But the learned counsel for appellee earnestly contends that the decision of the Supreme Court of this state in the case of First Texas State Insurance Co. v. Smalley, 228 S. W. 550, is decisive and conclusive of the point here in question as to the character and effect of the provisions of this policy. We have carefully read, of course, the opinion of the Supreme Court in the Smalley Case, written by Judge Greenwood; but after doing so, we have reached the conclusion that the decision in that case is not conclusive or decisive of the question here. In that case Katie Smalley brought suit against the insurance company to recover the principal sum of $172, besides interest, penalty, and attorney's fees, upon a policy of insurance issued on the life of one Henry Jones, who was a brother of Katie Smalley. In that policy the insurance company, in consideration of weekly premiums, promised to pay to Katie Smalley, upon the death of Jones, $172. After this provision and promise, as contained in the policy, there was inserted, among others, the following condition and limitation:

"In event of death of the insured resulting from any pulmonary disease, or disease of the heart, kidneys or liver, which had their beginning during the first twelve months from the date of this policy, then the liability of the company shall be limited to one-half of the amount that would have been payable under this policy in consequence of death from any other disease."

It was stated by Judge Greenwood in the opinion that this condition or limitation succeeded the promise to pay the $172 upon the death of Jones, but that both the promise and the condition or limitation appeared on the face of the policy. The insurance company in that case pleaded, among other defenses, that Jones died from a pulmonary disease which had its beginning during the first 12 months from the date of the policy, and tendered, by its pleading, $86 in full satisfaction of the company's liability on the policy. In that case it was shown, without dispute, that Jones, in fact, died from a pulmonary disease, which had its beginning before 12 months had expired from the date of the policy. The trial court rendered judgment in favor of Katie Smalley for the full principal sum of $172, besides interest, penalty, and attorney's fee, and that judgment was affirmed by the Galveston Court of Civil Appeals.

While the insurance company's motion for rehearing was pending, the Galveston court certified to the Supreme Court this question:

"Is the clause of the policy hereinabove set out in contravention of article 4742, Revised Statutes 1911, and is the same for that reason void?"

The Supreme Court answered the question in the affirmative. In the opinion, after quoting the provision of subdivision 3 of article 4742, Judge Greenwood continued as follows:

"The emphatic language that 'no policy of life insurance' shall be issued or delivered in this state, containing prohibited provisions, does not admit of the construction that life insurance policies may be issued in this state containing the prohibited provisions, though issued for small amounts and in consideration of weekly or biweekly premiums. The policy is therefore not relieved from conflict with article 4742 merely because issued on the industrial life insurance plan.

"In order to determine the true meaning of the obscure prohibition against provisions for modes of settlement of less value than the amounts insured on the face of a life insurance policy * * * resort can properly be had to the occasion for the statute's enactment, and to the remedy it was designed to afford, and to all the words of the statute.

"It was formerly usual for policies of life insurance to contain numerous conditions on

which the amount * * * promised to be paid on the death of the insured might be reduced or entirely defeated. Among common conditions were those relating to the insured's occupation, habits, residence, and suicide. Not infrequently the amount of the insurance was stated in bold type, on the face of the policy, while the conditions were inconspicuously put on the back. Such policies could be used to lead the unwary into the belief that they held enforceable promises of real and substantial benefits, when the promises were so limited and conditioned as to have slight actual value. In this way premiums could be collected from the insured in exchange for apparent, rather than real, obligations on the part of the insurers.

"The above were evils to be remedied by the statute, which was enacted in the interest of the insured. To accomplish the legislative intent, the language of the statute must be given such signification as to afford a reasonable remedy for these evils. The public policy declared is that the amounts promised to be paid on the death of the insured are not to be withheld nor diminished under limitations or conditions. * * * In this way the contract in this state as to benefits from life insurance is rendered simple and easily understood by all, including those lacking legal or business experience. * * *"

"The object of the statute being to prevent insurers from accomplishing a diminution in the payments promised, except as expressly authorized, it is mandatory. To give effect to the inhibited clauses would be to abrogate or evade the statute. Provisions inconsistent with the statute are void."

In the first place, the policy under consideration in the Smalley Case was a straight life policy, and the very first, and main, provision of the policy was an absolute promise on the part of the insurance company to pay to Katie Smalley, upon the death of the insured, Jones, $172. Then followed the condition and limitation above shown, providing, substantially, for the payment only of one-half of the $172 stated as the "amount" upon the face of the policy, in the event of Jones' death from a pulmonary disease, etc. As we read the opinion in that case, as a whole, and the reasons for the conclusions reached, the Supreme Court held that after having promised in the first clause of the policy to pay to the beneficiary named, upon the death of the insured, the stated amount of $172, it could not, without violation of subdivision 3 of article 4742, above mentioned, make provision by a subsequent clause in the policy by which it might discharge its promise to pay the amount stated on the face of the policy by paying a less sum than the full amount as named on the face of that policy, and the court held, therefore, that the subsequent clause or provision, attempting to limit the insurance company's liability in that case, was void and should be ignored. But it seems to us that the policy here in question is entirely different. As we have stated above, there was no promise on the part of

the insurance company, as contained in the first clause of this policy, to pay to the named beneficiary, upon the death of Carrie Brown, the sum of $150, but the promise was to pay to the beneficiary, upon such death, if resulting from natural causes, a sum of money equal to 15 times the weekly benefits provided for by the policy, but not to exceed, in any event, $150. We think that it cannot be reasonably contended that the first clause of this policy (clause a) is any more susceptible of the construction that the company agreed to pay the beneficiary, upon the death of Carrie Brown, $150, than it is of the construction that the company agreed to pay, upon such event, $75. And the very next clause of the policy (clause b) makes it clear, we think, that the amount of $150 was to be paid in the event only of Carrie Brown's death from an accidental cause. We see nothing in this policy that would be calculated to mislead any person of ordinary intelligence and understanding to believe that the company was promising to pay the beneficiary, upon the death of Carrie Brown, regardless of its cause, the sum of $150. On the contrary, we are inclined to agree with counsel for appellant in their contention that the policy here in question comes clearly within the provision of article 4762, and that it in no respects conflicts with the provision of subdivision 3 of article 4742.

Counsel for appellee also insist that the decision by the Texarkana Court of Civil Appeals in American National Insurance Co. v. Hawkins, 189 S. W. 330, sustains the judgment of the trial court in this case. The decision in that case was written by Judge Levy, and it has had the usual careful consideration that we give all decisions of Judge Levy when cited as authority in this court; but we think that the decision is not authority in support of appellee's contention in this case. As in the Smalley Case, the policy in the Hawkins Case was a straight life policy, and the amount stated upon the face of the policy there and which was agreed to be paid the beneficiary was $450. In a subsequent or following clause in the policy was contained this provision, by which it was attempted to limit the liability of the insurance company to one-half of $450, namely:

"One-half only of the above sum payable if death occur within six calendar months from date, and the full amount if death occur thereafter."

The insurance company in that case contended, and the undisputed evidence sustained the contention, that the insured's death did occur within less than six months after the date of the policy, and on that ground the insurance company contended that it was not liable upon the policy for more than $225. In that case Judge Levy, among other things, said:

"And, further looking to the provision or clause in question as it appears in the policy [meaning the clause limiting liability], it is concluded that such provision 'operates to accomplish the very thing which the law disapproves of. As may be seen from the recitals on the face of the policy, the insurance company, in consideration of the payment of the premiums 'mentioned in the schedule below,' agreed to pay at the death, happening without regard to any period of time, of the insured 'the amount stipulated in said schedule.' The amount, and only amount, 'stipulated in said schedule,' is $450. Then the provision in controversy appears below the schedule, but forms no part of its contents. This provision or condition plainly has for its purpose and object so far to modify the proceeding first or main stipulation for insurance as to provide for payment of only one-half of the agreed 'amount stipulated in said schedule' if the insured should die within six months from the date of the policy. Thus the language of the preceding first, or main, agreement in the policy may be regarded as specifying on the schedule, or face, of the policy the full sum of $450, to be payable on the death of the insured, happening without regard to any time limit; and the subordinate provision is to be regarded as intending to modify the first stipulation to pay the full sum on death happening at any time, by providing a benefit less than the full benefit if death happens within six months of the date of the policy. Had the 'said schedule' in the policy stated the amounts insured to be $225 if death occur within six calendar months from date of the policy, and $450 if death occur thereafter, the policy might have been construed, as contended by appellant, to be in the form required by the statute. But the first clause, or main agreement, or schedule, in the policy did not so state, or express the agreement of the amounts payable on the death of the insured."

We think that it is made reasonably clear from so much of the opinion in the Hawkins Case as we have above quoted, that the policy in that case, with respect to the objectionable feature which condemned it, is clearly distinguishable from the policy in the instant case, and we think that the reasoning of the court in that case for the conclusion reached largely sustains our conclusion in this case, and we therefore must disagree with counsel for appellee that the decision in the Hawkins Case supports his contention here.

For the reasons above stated, we hold that the form of the policy in question is in no respect violative of article 4742 of the Revised Statutes of this state, and that the intention of the parties, as clearly evidenced by the contract, should be given effect; and it having been shown by the undisputed evidence that Carrie Brown died from natural causes, the appellee was entitled to recover, upon such death, only $75.

[2] The next question for determination is whether upon the undisputed facts the trial court was in error in rendering judgment against appellant for the 22 per cent. penalty and attorney's fee, as it did.

The amount appellee demanded of appellant was $150, which, as we have shown, was an excessive demand, being $75 more than appellee was entitled to under the contract. Now the question is: Should appellee be permitted to recover the penalty and attorney's fee, as she did in this case, when the amount demanded by her of appellant was more than appellant owed her under the terms of the contract? We are aware that some of the Courts of Civil Appeals of this state are not in accord on the question.

The statute (article 4746), under which the penalty and attorney's fee was allowed in this case, reads:

"In all cases where a loss occurs and the life insurance company, or accident insurance company, or life and accident, health and accident, or life, health and accident insurance company liable therefor shall fail to pay the same within thirty days after demand therefor, such company shall be liable to pay the holder of such policy, in addition to the amount of the loss, 12 per cent. damages on the amount of such loss together with a reasonable attorney fees for the prosecution and collection of such loss."

In the case of Manhattan Life Insurance Co. v. Stubbs, 216 S. W. 896, the Galveston Court of Civil Appeals, in an opinion by Justice Graves, held, substantially, that when loss provided against in a policy occurs, and demand is made by the beneficiary upon the company issuing the policy for payment, and the demand as made is not complied with, then the beneficiary in a suit against the company, if any amount be recovered, is also entitled to recover the penalty mentioned in the statute, and attorney's fee, and this notwithstanding the demand for payment as made by the beneficiary might be in excess of the amount due under the terms of the policy. The El Paso court, speaking through Chief Justice Harper, made substantially the same holding in First Texas Prudential Insurance Co. v. Campos, 227 S. W. 244. But the Austin court, speaking through Chief Justice Key, in the case of American National Insurance Co. v. Turner, 226 S. W. 497, held, substantially, that where the beneficiary in a policy demands a larger amount of the insurance company than was ascertained to be due under the terms of the contract, neither the penalty nor the attorney's fee mentioned in article 4746 is recoverable. In that case Chief Justice Key quoted with approval a decision of the Supreme Court of Arkansas in the case of Pacific Mutual Insurance Co. v. Carter, 92 Ark. 378, 123 S. W. 384, 124 S. W. 764, the quotation being as follows:

"But the act makes the company liable for failure to pay the loss 'after demand made therefor.' The statute thus contemplates that

there shall be a demand. A recovery, for penalty and attorney's fee, cannot be had when complainant makes demand for more than he is entitled to recover. It could never have been the purpose of the Legislature to make the insurance companies pay a penalty and attorney's fee for contesting a claim that they did not owe. Such an act would be unconstitutional. The companies have the right to resist the payments of a demand that they do not owe. When the plaintiff demands an excessive amount, he is in the wrong. The penalty and attorney's fee is for the benefit of the one who is only seeking to recover, after demand, what is due him under the terms of his contract, and who is compelled to resort to the courts to obtain it."

Our Supreme Court has not, to our knowledge, had occasion to determine the conflict between the Turner Case and the Stubbs and Campos Cases, supra, though such conflict was noted by that court, as will appear from its opinion in the Stubbs Case in 234 S. W. 1105. It is therefore up to this court to determine for itself which view of such conflicting decisions is the correct one; and after very careful consideration, we have concluded that the question was correctly decided by the Austin court in the Turner Case. We cannot believe that it was the intention of our Legislature, by enacting article 4746, to permit a beneficiary in an insurance policy to recover the penalty and attorney's fee specified in the article in all suits where recovery for any amount may be had, regardless of whether the amount of the demand be excessive or not. We find nothing in the language employed in the article which would seem to compel such a construction, and in the absence of such language, we are not inclined to so construe the statute.

[3] It is well settled, as a general rule, that a party litigant is not subject to a penalty or held liable to the payment of an attorney's fee incurred by his adversary merely because of a refusal or failure on his part to pay or recognize a demand or claim made against him by his adversary, and such recoveries can be allowed only where expressly provided by the Legislature; and we think that the intention of the Legislature to so provide should be reasonably certain from the language used before any such statute should be given such construction by the courts.

[4] We are not unmindful of the fact, often declared, that the police power of a state, acting through its Legislature, is very broad, and that the exercise of such power will not be questioned or reviewed by the judiciary, except where the exercise of the power is clearly unreasonable and arbitrary. If it was the intention of the Legislature of this state, in enacting article 4746, to provide for a recovery of the penalty and attorney's fee mentioned in all suits on an insurance policy where recovery in any sum might be had, regardless of whether the demand made of the company be more than is due under the contract, then we are inclined to think that the statute would be in conflict with and violative of the Fourteenth Amendment to the Constitution of the United States, which, in effect, prohibits any state legislation which denies to any citizen the equal protection of the law, or the effect of which would be to deprive any citizen of his property without due process of law. We know of no other statue in this state containing such provisions as to penalty and attorney's fee as does article 4746, if that article should be construed as to allow the plaintiff in a suit on an insurance policy to recover a penalty and attorney's fee, regardless of the amount of the demand made on the company, and it seems to us that the language of the Supreme Court of the United States, in the case of G. C. & S. F. Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, wherein a statute of this state was under construction, is quite appropriate here. We quote:

"The act singles out a certain class of debtors and punishes them when for like delinquencies it punishes no others. They are not treated as other debtors, or equally with other debtors. They cannot appeal to the courts as other litigants under like conditions and with like protection. If litigation terminates adversely to them, they are mulcted in the attorney's fee of the successful plaintiff; if it terminates in their favor, they recover no attorney's fees. It is no sufficient answer to say that they are punished only when adjudged to be in the wrong. They do not enter the courts upon equal terms. They must pay attorney's fees if wrong; they do not recover any if right; while their adversaries recover if right and pay nothing if wrong. In the suits, therefore, to which they are parties they are discriminated against, and are not treated as others. They do not stand equal before the law. They do not receive its equal protection."

In the case of Union Terminal Co. v. Turner Construction Co., 247 Fed. 727, 159 C. C. A. 585, 11 A. L. R. 880, the Circuit Court of Appeals for the Fifth Circuit had under consideration a statute of the state of Florida (Laws 1903, c. 5143), an act entitled as follows:

"An act to provide liens for materialmen, mechanics, artisans and laborers, and to provide the manner in which such liens shall be acquired and to provide a remedy for the enforcement of such liens."

Section 17 of the act reads as follows:

"If the plaintiff shall prevail, the court shall allow him reasonable attorney's fees to be fixed by the court, not to exceed ten dollars, if the amount recovered do not exceed one hundred dollars, and not to exceed ten per cent. of any recovery greater than one hundred dollars."

The Florida statute, in an opinion by Judge Batts, a Texas lawyer of no mean ability, was held unconstitutional, and we

cannot make the reason for the holding any plainer than by quoting the language of Judge Batts:

"The statutes of Florida do not make like provisions for any other character of cases. * * * The question has not come directly before the Supreme Court of the United States, nor has it been passed on in any other Federal Court. In the case of G. C. & S. F. Railway Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. 255, 41 L. Ed. 666, a Texas statute, providing that reasonable attorney's fees might be recovered against railroad companies on claims not exceeding $50 for labor, etc., was held unconstitutional. The Supreme Court used this language in disposing of the case: [Then follows the quotation from the Ellis case, as shown by us above.]"

Judge Batts then proceeds:

"After the decision in the case of Ellis, the statutes of Texas were amended; and in the case of M. K. & T. Railway Co. v. Cade, 233 U. S. 642, 34 Sup. Ct. 678, 58 L. Ed. 1135, the court held the amended act constitutional. The amended act had application to any person or corporation, gave the attorney's fees only in case the full amount of the claim was established, confined its application to personal services rendered, for material furnished, for overcharges on freight, and for stock killed or injured, and limited the amount of the recovery of attorney's fees to $20. This act was sustained as 'a police regulation, designed to promote the prompt payment of small (but well-founded) claims, and to discourage unnecessary litigation in respect to them.'

"In so far as the claim of the construction company for attorney's fees in this case is concerned, the statute of Florida would be open to every objection pointed out in the Ellis case, and would have none of the merits indicated in the Cade case.

"The statute in question requires the allowance of attorney's fees, though the claim asserted by the suit is an excessive one. If the amount of attorney's fees required to be allowed to the plaintiff is more than that of the difference between what he claimed and what he recovers, the result is to give him the unconscionable advantage of being able to make it cheaper for the defendant to forego his rights than to assert them. The statute not only undertakes to give to plaintiffs, in the character of suits mentioned, a right not accorded to plaintiffs in other suits, but it discriminates between plaintiffs and defendants in the suits to which it applies, in that the former may .resort to litigation at the latter's expense, though only a fraction of the amount claimed is recoverable, while the latter is subject to the expense of an attorney's fee, though he is wholly or partially successful in the suit. The result of the statute passed on in the last case cited (M. K. & T. Railway v. Cade) is to protect a class having claims small in amount from losing all or a substantial part of what is due them in doing what is required to get it. Those who claim more than is due them get no benefit from that statute. An effect of the statute now under consideration is to make defendants in only one class of suits chargeable with expenses incurred by plaintiffs who sue for more than they are entitled to recover, with the result that the defendant, though he successfully controverts the amount of the claim made against him, may be required to pay more than he owes, or than the plaintiff claimed.

"Under the weight of authority in the state courts, under the reasoning of the Supreme Court of the United States, and because of the results detailed, we hold the Florida statute unconstitutional."

[5] We think that every reason suggested by Judge Batts in the opinion above quoted for holding the Florida statute in violation of the Fourteenth Amendment to the federal Constitution ought to apply if the constitutionality of article 4746 of our statute were here in question. But, as we have above stated, it is our conclusion that it was not the intention of our Legislature to provide for a recovery of the penalty and attorney's fee mentioned in the article, except in the event the plaintiff in the suit shall recover as much as the amount demanded of the insurance company by the written demand provided for in the article. If it should be said that article 4746 is subject to the other construction, and that because it is so, the article would be in violation of the Fourteenth Amendment to the federal Constitution, then we say, following the well-established rule, that it should not receive such construction at the hands of the courts, because the rule is that where a statute is subject to two constructions, one of which would leave the statute valid and enforceable, and the other would make it unconstitutional, then that construction which would give validity to the act should be given the statute, instead of the construction which would destroy the statute.

Nor do we think that the conclusion we have reached as to the proper construction of article 4746 is, to any extent, in conflict with the decision of the Texarkana Court of Civil Appeals in Insurance Co. v. Hawkins, 189 S. W. 330. Judge Levy, in that case, held that the beneficiary in the policy was entitled to recover the statutory penalty and attorney's fee for the reason, as we construe the decision, that the amount for which the written demand was made on the company was less than the plaintiff in the suit actually recovered by the judgment. The reasoning in that case really sustains the conclusion we have reached in the instant case.

It follows, from what we have said in our discussion of the two questions above, that this court is of the opinion, upon the undisputed facts, that the appellees are only entitled to recover of appellant the sum of $75, with interest thereon at the rate of 6 per cent. per annum from September 1, 1920, until such judgment shall be paid, and that appellees are not entitled to recover any penalty or any amount for attorney's fee. Therefore the trial court's judgment, in so far as it is to the contrary, will be reformed by the judgment of this court, awarding

:appellees a recovery for $75, with interest thereon at the rate of 6 per cent. per annum from September 1, 1920, until paid, and ·denying any recovery for any penalty or attorney's fee, and as so reformed will be :affirmed.

Reformed and affirmed.