### POWER MFG. CO. v. TINDALL et al.
### No. 11176.

Circuit Court of Appeals, Eighth Circuit.
Dec. 27, 1938.

M. F. Elms, of Stuttgart, Ark. (W. A. Leach, of Stuttgart, Ark., on the brief), for appellant.

E. W. Moorhead, of Little Rock, Ark., and Joseph Morrison, of Stuttgart, Ark. (Lawrence C. Auten, of Little Rock, Ark., on the brief), for appellees.

Before SANBORN, WOODROUGH, and THOMAS, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken to reverse a decree denying the Power Manufacturing Company recovery of a sum of money which had been realized by proceedings had under a creditor's bill filed by the company in the District Court for the Eastern District of Arkansas, Western Division. The court held that the company had assigned the judgment on which the creditor's bill was based and the cause of action embodied

in the creditor's bill to one August Prange, later deceased, and it awarded the recovery to the administrator of the deceased's estate and dismissed the company out of the case. The company denied that it had assigned its judgment. The federal jurisdiction was established by diversity of citizenship and more than three thousand dollars involved.

It appears from the record that in 1924 the Power Manufacturing Company obtained a judgment against one A. A. Tindall of Stuttgart, Arkansas, for $11,734.04 and afterwards brought the creditor's bill against him and others to subject certain property to the lien of the judgment.

George C. Lewis of Stuttgart was attorney for the company in that litigation and also in other business and litigation which the company had in Arkansas, extending over a period of years. While the creditor's bill was pending in 1930, he was authorized to make and made a compromise agreement with the judgment creditor A. A. Tindall that Tindall would pay and the company would accept $5,000 in full consideration of the judgment on which the creditor's bill was based. It was further agreed that on consummation of the compromise settlement the company, instead of satisfying its judgment of record, would assign its judgment and cause of action to Tindall's nominee. Accordingly, in March, 1930, the company executed a written assignment of the judgment and the cause of action in blank and transmitted it to its attorney, George C. Lewis, with instructions to accept $5,000 in cash, and when the amount was paid to him to fill in the name of Tindall's nominee and deliver it over. In May, 1930, the attorney Lewis requested the company's permission to let Mr. Tindall pay $2,500 then and the remaining $2,500 after he had harvested his rice crop in the fall. Shortly afterwards, in the same month, attorney Lewis remitted to the company $2,500 received from Tindall and reported that the balance was arranged in such a manner that it would be forthcoming shortly. The company wrote the attorney acknowledging receipt of the $2,500 and expressed hope that the balance would be paid soon. No further payments were ever received at the company's home office on account of the Tindall indebtedness, from its attorney or otherwise, and the company was never informed that its assignment had gone out of the hands of its attorney until the present controversy arose, nearly seven years later. The attorney Lewis died in April, 1935, and A. A. Tindall died in June, 1936.

On the trial of the issue, the administrator of the estate of August Prange had the written assignment of the judgment executed by the company in his possession with the name of August Prange as assignee filled in the blank left for the purpose. His witness, Joseph Morrison, testified that he had been attorney for the judgment debtor A. A. Tindall and the other defendants to the creditor's bill and that he was also the attorney of August Prange. That he had advised A. A. Tindall in regard to the compromise agreement with the company and that the agreement was made. He was informed when attorney Lewis received the assignment in blank from the company and was informed that he should have his client raise the money. He told attorney Lewis the name of the person to whom the assignment was to be filled in. He said he had made the statement "that the check could be produced and the probable nature of the way the money was paid, but that had merely been told him and would not be competent evidence." Between the middle of May and the first of June, 1930, attorney Lewis brought the assignment in question, filled out to August Prange, to the law office of the witness, and made delivery of it to him, stating at the time that "the matter was closed out."

The reason the assignment was delivered to the witness was because he was acting as attorney for both A. A. Tindall and August Prange. He caused the assignment to be put in the file kept in his office for his client August Prange, and it remained there until after the death of George C. Lewis, in 1935, when the witness delivered it to August Prange.

The witness was corroborated by his secretary to the extent that she testified that she saw the company's attorney Lewis go into Mr. Morrison's private office and after he went out she found the assignment in question on Mr. Morrison's desk and she asked Mr. Morrison whether she should file it in Mr. Tindall's file or August Prange's, and "he said in August Prange." After acquiring the assignment, August Prange reinstated the creditor's bill and prosecuted it in the name of the assignor company as permitted by the Arkansas statute.

Prange's administrator offered the assignment in evidence and it was received. It recites that the company "does hereby,

and by these presents, sell, assign, transfer and set over unto the said August Prange a certain judgment", describing the company's judgment against A. A. Tindall, and that the purpose of the instrument is "to substitute the above named August Prange in its place and stead as the owner of the said judgment, with full right to take any and all action thereon which this plaintiff (the company[1]) might now take under the law." The consideration is expressed: "for and in consideration of the sum of one dollar and other good and valuable considerations to it paid by August Prange receipt of which is hereby acknowledged."

The trial court concluded that "the possession of the assignment by August Prange, a third party, raises a presumption that the assignment was properly delivered according to the instructions of the Power Manufacturing Company to its attorney, and if they directed the delivery to be made only upon the payment of $5,000.00 as they testify, then the legal presumption is that said consideration was paid as it is recited in the assignment, that the consideration was paid and the burden is on the Power Manufacturing Company to show it was not paid."

We think the conclusion so stated by the trial court correctly declares the law of Arkansas. It is apparent that the assignment executed by the company and committed to its attorney Lewis to be filled out and delivered by him on receipt of the money from Tindall was in lieu of and intended to operate as a receipt of Tindall's debt to the company. The practice of confiding duly executed corporate receipts to agents authorized to take in money due the corporation and deliver the receipts therefor is very common. The practice is almost universally followed in the insurance business. We are not cited to any holding that the possession of such a receipt obtained from an agent authorized to receive the money and issue it does not raise presumption of payment. In Security Ben. Ass'n v. Punch, 173 Ark. 572, 292 S.W. 994, the Supreme Court of Arkansas held (syl. 3) : "Receipts for payment of money are prima facie evidence of payment thereof, though open to contradiction, and burden of overcoming prima facie case is on party giving receipt." Continental Gin Co. v. Benton, 104 Ark. 367, 149 S.W. 528; Fidelity Mutual Life Ins. Co. v. Click, 93 Ark. 162, 124 S.W. 764.

The trial court also concluded that the Power Manufacturing Company had introduced no evidence to prove that the consideration set forth in the assignment was not in fact paid and our examination of the evidence has led us to the same conclusion. Communications passed between the company and its attorney which led the company to believe that payment was not made, but there is no transaction or conversation to which August Prange was a party or which amount to competent evidence of non-payment against him or his administrator. It would seem from the whole record that personal knowledge of the transaction that led to the delivery of the company's assignment was confined to George C. Lewis, A. A. Tindall and August Prange, who were all deceased prior to the trial of the issue.

It has been contended for the company that if the assignment was placed in the hands of Prange's attorney Morrison at all, it was not so placed as a delivery to either Prange or Tindall nor to pass title thereto. But we think attorney Morrison's testimony that George C. Lewis delivered the assignment to him with the statement that the matter was closed, and that he accepted and kept it for Prange and delivered it to Prange, and that Prange treated it as his own, refute the contention. Morrison's testimony stood uncontradicted and the trial court was justified in basing his findings upon it.

A further contention is that the delivery of the assignment without payment of the full consideration was not binding on the company and many cases are cited to the effect that an attorney or other agent may not bind his client or principal beyond the apparent scope of his authority. But we deem the contention answered by the fact that prima facie proof of payment of the company's debt was made. The company was unable to rebut it by any evidence competent against Prange, or his administrator. It is lastly contended that the burden of proof was upon Prange to prove payment. We think such burden was upon him, but we think his burden was sustained by the production of the assignment in his possession by Prange and the recitals therein contained.

Finding no error in the decree, it is affirmed.

[1] Supplied.