SOUTHERN INSURANCE COMPANY *v.* HASTINGS.

Opinion delivered July 3, 1897.

PLEADING—AMENDMENT.—In an action on a policy of fire insurance in which the defense is that defendant was not liable because of a breach of warranty in plaintiff's application for insurance, it is error to refuse to permit defendant to amend his answer at the trial by setting up other breaches of warranty first disclosed by plaintiff's testimony. (Page 257.)

APPEAL—INCONSISTENT POSITION.—A party cannot on appeal contend for a theory of the case different from that which it contended for in the trial court. (Page 257.)

INSURANCE—WARRANTY—ESTOPPEL.—Where an insurance agent, authorized to fill up blank applications, writes false answers in an application, without the knowledge of the applicant, and the company receives the premium and issues the policy, the company cannot set up the false answers in avoidance of the policy. (Page 257.)

Appeal from Conway Circuit Court.

JEREMIAH G. WALLACE, Judge.

*Rose, Hemingway & Rose,* for appellant.

Defendant should have been allowed to amend its pleadings to conform to the proof. Sand & H. Dig., § 5769; 58 Ark. 504; 42 *id.* 57. The court erred in declaring the law as to the effect of false answers to questions contained in the application, to the effect that if applicant answers correctly, but the agent writes the answers incorrectly, the company is precluded to set up the incorrectness of the answer to defeat the policy. 2 Biddle, Ins. §§ 1053, 1063; 52 Ark. 10; 53 *id.* 215; 58 *id.* 280; 92 N. Y. 274, 282, 283, 284.

*Carroll Armstrong,* and *Ratcliffe & Fetcher,* for appellee.

The amendment was properly refused. 58 Ark. 505. There was no error in the court's charge. 52 Ark. 11; 12 Mich. 202; 24 N. Y. 302; 58 Ark. 277; 20 S. W. Rep. 900; 52 N. W. Rep. 548; 30 *id.* 401; 29 *id.* 565; 43 Mo. 149.

WOOD, J. This suit is to recover upon a policy of fire insurance. ·The answer presented two defenses: "(1) In the application for insurance the insured answered falsely that the property was unincumbered. (2) That the property was destroyed with the knowledge and consent of the assured, in order to collect the insurance money." The property insured was a gin house, various articles of machinery, cotton and cotton seed. The total amount covered by the policy was $2,000. The policy was issued on the 1st day of October, 1893, and the property was destroyed by fire October 17, 1893.

The application for insurance contained the following: "(8) Is the building mortgaged or incumbered?" Ans. "No." "(9)

What amount, if any, is unpaid on machinery?" Ans. "$700." "(19) Have you in use feeders to each gin stand?" Ans. "Yes." Following the questions and answers in the application is a request for insurance, with a covenant that the answers are full, just and true, and are considered the basis on which the insurance is to be effected, and are understood as being a part of the policy.

The answers are made a warranty. The policy makes the the application a warranty, and a part of the policy, and has a provision that "if the assured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning the insurance, or the subject thereof, or if the interest of the insured in the property be not truly stated therein, the policy shall be void."

Appellee testified: "I stood by, and saw Moose, the agent of the company, while he wrote the application. I can read and write. I told him that the lots were mortgaged to secure the Bolton debt. I didn't answer question "8" in the application, "No." I told Mr. Moose that Dudley E. Jones had a mortgage on the boiler and engine, and Bolton on the land. I owed, at the time the insurance was taken out, to Dudley E. Jones about $300, Ed Hammond about $200, J. H. Jones about $175, and the Winship Company about $268,—altogether about $740 on the gin, press and boiler. There was due $900 on a mortgage on the land, and on my farm, but not for machinery. I had feeders and condensers. My condenser was in use, but the feeder was not. I told Moose the feeder was not up because I did not have an elevator."

W. L. Moose testified: "I was the agent for the defendant at Morrilton at the time the policy was issued to Hastings. Hastings stood by and watched me write the application for a policy. I am quite sure he did not tell me the property was incumbered except as stated in the application. The reason I am so certain is because I had some trouble before, and I was careful to see that all the questions were clearly understood, and correctly written in the application."

At the conclusion of the testimony of Hastings, the defendant (appellant) asked leave to amend its answer to show "that in the answer to question No. 10 in the application for

insurance the plaintiff (appellee) stated that there was $700 due and unpaid on the machinery, when in truth there was due and unpaid $1,100 on that account; that said answer was a material misrepresentation of the condition and risk of said property." And when the evidence was all in, appellant asked leave to amend its answer to show "that the plaintiff (appellee), in answer to question No. 19, stated that he had feeders in use to each gin stand, when in fact he did not have any feeder in use; that his answer was false, and constituted a material misrepresentation as to the condition and risk of the property to be insured." The refusal of the court to allow these amendments presents the first question for decision.

The testimony of appellee shows that Dudley E. Jones had a mortgage on the boiler and engine for about $300. The proof of loss shows that there was a claim in favor of the Winship Company for the purchase money of the gin, feeder and condenser, and the appellee testified that he owed the Winship Company about $268. It is also shown by the proof of loss that there was a mortgage on the press in favor of E. O. Hammond for $225, and appellee testifies that he owed Ed. Hammond about $200. The testimony of J. H. Jones shows that he sold appellee a mill, and appellee testified that he owed J. H. Jones about $175. So there can be no doubt that the proof shows that an amount aggregating $943 was unpaid on the machinery when the appellee made application for insurance. True, after enumerating the items due, appellee, says, "altogether about $740 on the press, gin and boiler." But the sum total of the amounts is $943, instead of $740. To the question "What amount, if any, is unpaid on the machinery?" the answer written in the application, as shown above, is "$700." Question No. 19 in the application is: "Have you in use feeders to each gin stand?" The answer as written is "Yes." In his testimony Hastings says: "The feeder was not in use. I told Moose the feeder was not up because I did not have an elevator." It is alleged in the proposed amendments that "the answers were material misrepresentations of the condition and risk of the property to be insured." This should be treated as true until denied.

In view of the proof, and the stipulations of the contract of

insurance set out *supra*, the amendments asked presented a meritorious defense.  Should they have been allowed?

The record presents "all the evidence in the case." The facts furnishing the basis for the proposed amendments were disclosed by the plaintiff's own testimony and that introduced in his behalf.  They went to the jury without objection. Appellee could not have been surprised by these amendments, for the facts justifying them were within his personal knowledge.   The amendments were offered as soon as the facts were elicited, and the defendant could not have been required to ascertain these facts before.  It had no reason before to suspect that the answers of appellee in his application for insurance were untrue.

The defense being non-liability, the amendments did not change the defense, but only presented additional grounds.

"The primary object of the code," as was said in *Burke* v. *Snell*, 42 Ark. 57, "is the trial of causes upon their merits, and to that end the provisions for amendment are exceedingly broad and liberal."   See §§ 5764 to 5777, Sand. & H. Dig., especially § 5769.   Under these provisions, and our decisions construing them, we are of the opinion that the court erred in in refusing the amendments.   *Hanks* v. *Harris*, 29 Ark. 323: *Caldwell* v. *Meshew*, 53 *id.* 263; *McMurray* v. *Boyd*, 58 *id.* 504; *Railway* v. *Dodd*, 59 *id.* 317.

We find no error in the ruling of the court upon instructions.   There was evidence to justify the instructions given. The appellant did not ask the court below to present to the jury the theory of the case it contends for here.   Therefore it cannot complain.   It presented its case upon the theory that the answers were written by its agent in the application correctly, not that they were written or might have been written incorrectly through inadvertence, and that the assured knew of that fact.   An insurance agent having authority to fill up blank applications for insurance, who writes false answers in the application, binds his principal by the answers he writes. And the company, having received the premiums and issued the policy based upon such application, is estopped to set up the false answers contained therein in avoidance of the policy.   *Brodie* v. *Ins. Co.*, 52 Ark. 11.   This, unless the applicant was aware

at the time the answers were being written, or before signing the application, that the answers were written falsely to defraud the company. In such a case he would be a partaker of the fraud. *Providence L. Ass. Soc.* v. *Reutlinger*, 58 Ark. 528; *Grattan* v. *Metropolitan Ins. Co.*, 92 N. Y. 274. "In the great majority of American courts," says Mr. Biddle, "it has been held, where the insured has made truthful statements to the insurer's agent, but the latter has erroneously, though not necessarily wilfully, transcribed them, that parol evidence is admissible to show the error and the real statements made by the insured, and that the insurer cannot object, though the application be signed by the assured, in ignorance, however, of the agent's errors." 2 Biddle, Ins. § 1063, and authorities cited.

For the error mentioned, reverse the judgment, and remand the cause for new trial.