RAMEY *v.* FLETCHER.

Opinion delivered February 6, 1928.

1. ALTERATION OF INSTRUMENT—EVIDENCE.—Evidence *held* sufficient to justify cancellation of a deed on the ground that defendant had altered it before recording, by making herself grantee, instead of her husband, where defendant failed to produce the original deed.

2. EVIDENCE—PRESUMPTION FROM WITHHOLDING EVIDENCE.—In a suit for cancellation of a deed on the ground that it had been altered so as to name defendant as grantee instead of her deceased husband, defendant's failure, upon request by plaintiffs, to produce the original deed created a presumption that such deed, if produced, would favor the claim of plaintiffs.

3. APPEAL AND ERROR—CHANGE OF THEORY.—In a suit for cancellation of a deed on the ground that defendant altered it to name herself as grantee, instead of her deceased husband, defendant cannot contend for the first time on appeal that she was entitled to reimbursement for money paid in purchasing the land in dispute, where such contention was inconsistent with the theory presented and relied on in the trial court.

4. APPEAL AND ERROR—CONCLUSIVENESS OF CHANCELLOR'S FINDING.—The finding of the chancellor will not be disturbed unless it is against the preponderance of the evidence.

Appeal from Logan Chancery Court, Southern District; *J. V. Bourland,* Chancellor; affirmed.

*John P. Roberts* and *W. L. Kincannon,* for appellant.

*Evans & Evans,* for appellee.

MEHAFFY, J. The appellees, plaintiffs below, brought suit in the chancery court of Logan County, alleging that they are the only heirs at law of Joe M. Fletcher, deceased, and that the appellant, who was defendant below, is the widow of the said Joe M. Fletcher, deceased; that defendant, Dave Ramey, is the husband of the said Mary Jane Ramey.

It is alleged that on the 20th day of March, 1905, Joe M. Fletcher and his aunt, Elizabeth Hurston, purchased 165 acres of land in the Southern District of Logan County from one J. S. Cotner. The lands were described, and it was then alleged that, on the 20th day of March, 1905, the said Cotner made, executed, acknowledged and delivered to Fletcher a deed to himself and Elizabeth Hurston, jointly, in which deed Florence Cotner, wife of the said J. S. Cotner, joined, relinquishing her rights of dower and homestead. A copy of said deed is attached to the complaint as an exhibit.

Plaintiffs allege that on the first day of September, 1906, Fletcher and Elizabeth Hurston agreed on a division and partition of said land, and that partition deeds were made carrying out the agreement. It is further alleged that Fletcher did not place the deed from Elizabeth Hurston on the record, and that, after his death, the defendants inserted in the said deed the word "Mrs." before the name of the said J. M. Fletcher, and changed the word "his" to "her" in said deed, and then filed the same for record; that by such forgery the defendants undertook to convey the title to the above described land to the defendant, Mary Jane Ramey.

Mary Jane Ramey and Dave Ramey filed a joint answer, admitting that the plaintiffs were related to Joe M. Fletcher, deceased, as set out in the complaint, and that Mary Jane Ramey was his widow, and that, after his death, she married Dave Ramey. And the answer then denied all of the material allegations in the complaint, and alleged that Fletcher and Elizabeth Hurston purchased the land in Logan County, and that Mary Jane Ramey paid one-half of the purchase price with her

individual money, and that the deed was made jointly to him and Elizabeth Hurston, but that Mary Jane Ramey and Elizabeth Hurston agreed upon a division, and that Elizabeth Hurston executed and delivered to the defendant, Mary Jane Ramey, a deed. She further alleged that she had owned, occupied and possessed said lands, paid the taxes thereon under and by virtue of said deed from the said Elizabeth Hurston, continuously since September 1, 1906, to the present, a period of 19 years. She denied that the defendants, or either of them, had any interest in the lands.

Certified copies of deeds were filed with the pleadings.

The chancellor entered a decree in favor of the plaintiffs, and decreed the cancellation of the deed which was alleged to have been fraudulently altered, and that the heirs of J. M. Fletcher are invested with and hold the title to said lands, subject to the rights of dower and homestead of the widow, Mary Jane Ramey. It is ordered that the defendants pay all the costs. From this decree an appeal was taken to this court.

Appellant, in his brief, states: "The issues before the court then are two issues. First, was the testimony offered by the plaintiffs sufficient to warrant the court in canceling the deed? Second, if it was sufficient to warrant the court in canceling the deed, equity should reimburse the defendant, Mary Jane Ramey, for the money paid by her in purchasing the land in dispute."

The first question, of course, is purely a question of fact. The undisputed proof shows that the deed from J. S. Cotner and wife was made to J. M. Fletcher and Elizabeth Hurston, and not to Mrs. J. M. Fletcher. The partition deed from Elizabeth Hurston was not put on record during Fletcher's lifetime, was in the possession of the defendants, and was placed on record after the death of J. M. Fletcher. The undisputed fact is that J. M. Fletcher did not put either of the partition deeds from Elizabeth Hurston to himself upon the records, and that he died in possession of both of them, and that thereafter

they were in the possession of the defendants. The defendants had the deed, had it placed on record, and then it was lost. At any rate, the defendants did not produce it at the trial. They were requested by the plaintiffs to produce the original deed, which plaintiffs claim was changed by adding "Mrs." before J. M. Fletcher and changing "his" to "her." The fact that Fletcher had possession of the deeds and of the property during his lifetime; that, after his death, they were in possession of the defendants; that defendants placed the deed on record, and were then unable to produce the original deed for examination so that it might appear whether or not there had been a change; and the fact that the original deed from Cotner was to J. M. Fletcher, are all circumstances to be considered in determining whether or not the deed was made to J. M. Fletcher or to Mrs. J. M. Fletcher. These circumstances, together with the other evidence introduced by the plaintiff, when considered with the evidence introduced by the defendant, we think justified the chancellor in finding that the deed had been changed.

W. D. Ramey, the husband of Mrs. M. J. Ramey, testified that he had the land changed on the taxbooks from J. M. Fletcher to M. J. Fletcher, and that up to that time he had never seen the deed. He testified that he had this change made through the advice of his wife. He further testified that later he came across the deed, and took it to the courthouse to be recorded. He testified that he did not change the deed. He admitted, however, that he told Mr. Beck that he understood he could pay the taxes on the land for seven years and get a tax title. He did not remember making any statement to Mr. Friddle. He also testified with reference to his conversation with Beck, that he was not paying the taxes for the purpose of getting a title, but that he was just talking to hear his head rattle, and he did not know what he said it for. Ramey never read the deed, never saw it for a year or two, and did not know what the deed contained. He

did not know that it was his wife's deed; just supposed it was.

Mrs. M. J. Ramey testified that, prior to her marriage with Ramey, she was Mrs. J. M. Fletcher. She said that most of the money paid for the land bought of Cotner was her money; that she paid $450 of her own money, but that her husband had the control of this money prior to the purchase of the land; that, after they purchased it, they divided it, and the partition deed was made to her; that Mr. Ramey never saw this deed until the day he put it on record; during the time from Fletcher's death until the day Mr. Ramey put the deed on record she had this deed, but did not have it put on record; that she told Mr. Ramey to change the land on the taxbooks from J. M. Fletcher to her name, M. J. Fletcher.

Witness could not read. Neither of them could read, but she said that a man named Brown read the deed, and she knew that it was Mrs. J. M. when this man Brown read the deed. She does not know what became of the deed after it was recorded, but thought it was carried back to the bank, and has never seen it since. She had had the money about a year before they bought the land, but her husband had had possession and control of it until the time they purchased the land, and he stated that he paid one-half of the price, $1,200.

As we have said, the circumstances and evidence, when considered together, we think clearly show that the land belonged to J. M. Fletcher, and that the deed was changed after J. M. Fletcher's death and before it was put on record. There is really no satisfactory explanation of what became of the deed after it was recorded. It was, however, in the possession of the defendant, and doubtless, if it had been produced, would have shown conclusively whether or not there had been the change claimed by plaintiffs, and the fact that it was not produced is a circumstance very strongly tending to corroborate the theory of plaintiffs.

"An adverse presumption, usually a strong one, is ordinarily indulged against a party on account of his

non-production of documents. If a party, after having been duly notified to produce books and papers at the trial, fails or refuses to do so, it may be presumed that such failure or refusal is because such books and papers, if produced, would operate against his claim and in favor of the claim of the opposite party. Where a party relies on parol evidence of a fact, instead of producing written evidence thereof in his possession, it ought to require much less evidence to defeat him than if he had no written evidence which he could have produced. And a weak case may be strongly corroborated by the opposite party's failure to produce or account for documents that would remove all doubt. Again, where, after notice and refusal to produce documents, it is shown or admitted that they are under the control of the party, and secondary evidence is given, and such evidence is imperfect, vague, and uncertain, every intendment and presumption is to be made against the party who might remove all doubt by producing the higher evidence." Vol. 10, R. C. L., 889.

"The plaintiff's evidence had tended to show that the defendant, having control of the books and papers called for by the plaintiff, and ordered by the court to be produced, had refused to produce them, in defiance of the order; that the reasons given for their nonproduction were frivolous and derisive; that the defendant and its officers stood before the court in the attitude of men who had spoliated or suppressed evidence. The question is whether the court applied the correct rule of law in the instructions to the jury. * * * This language was used in the charge: 'But you can easily see that, if books are destroyed, if books are hidden, if books are carried away, the power of the court is limited in that respect. * * * But the arm of the law is long enough and strong enough to reach cases of that sort, and when the jury feel, in a civil case, when they are satisfied by a fair balance of proof, fair balance of probabilities, that a party has suppressed books, has hidden books, has kept books away that have been called for, and which it has had notice to produce, then the law says the jury may presume from the absence

of those books and papers against the party called upon to produce them, and not producing them, and in favor of the other party.''

Further on the court said: ''If you find that the defendant, after being notified to produce books and papers, has failed to do so, you have a right to presume that it is because those books and papers would make against its claim and in favor of the claim of the plaintiff. You can give to that presumption such weight as you think it ought to have.'' *F. R. Patch Mfg. Co.* v. *Protection Lodge, etc.,* 77 Vt. 294, 60 Atlantic 74.

''Mere withholding or failure to produce evidence, which, under the circumstances, would be expected to be produced, and which is available, gives rise to a presumption less violent than that which attends the fabrication of testimony or the suppression of documents in which other parties have a legal interest; but the courts recognize and act upon the natural inference that the evidence is held back under such circumstances because it would be unfavorable.'' Jones on Evidence, vol. 1, 152. See also notes on page 582 of L. R. A. 34.

It cannot be doubted that the deed, if produced, would have shown conclusively whether or not the deed had been changed as alleged by plaintiff. Certainly, if there had not been a change, and if defendant's theory is correct, the production of the deed would have demonstrated this—would have removed all doubt.

Appellant's next contention is that, if the evidence was sufficient to warrant the court in canceling the deed, equity should reimburse the defendant, Mary Jane Ramey, for money paid by her in purchasing the land in dispute. Appellants did not ask this relief in the court below, and this contention is inconsistent with the theory presented and relied on in the court below.

''The appellant did not ask the court below to present to the jury the theory of the case it contends for here. Therefore it cannot complain.'' *Southern Ins. Co.* v. *Hastings,* 64 Ark. 253, 41 S. W. 1093.

"It is contended by counsel for appellant that there was no evidence at all of correctness of the account sued on. This, however, was not made an issue by the pleadings, and the question cannot be raised here for the first time." *Shinn* v. *Platt*, 82 Ark. 260, 101 S. W. 742.

"It is well settled in this State that a party cannot, on appeal, contend for a theory of the case different from that which was contended for in the trial court." *White Company* v. *Bragg*, 168 Ark. 670, 273 S. W. 7.

It is a well established rule of this court that the finding of the chancellor will not be disturbed unless it is against the preponderance of the evidence.

The decree of the chancery court is correct, and is therefore affirmed.