SECURITY BENEFIT ASSOCIATION *v.* PUNCH.

Opinion delivered April 11, 1927.

1.   APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—In an action on a beneficiary certificate of insurance, where the issue was whether insured paid the annual premium when the policy was delivered to him, was submitted to the jury with proper instructions, an adverse verdict is conclusive on appeal if supported by substantial evidence.

2.   INSURANCE—PAYMENT OF PREMIUM—EVIDENCE.—In an action on a policy of insurance, evidence *held* to warrant a finding that the annual premium was paid by the insured when the policy was delivered.

3.   PAYMENT—RECEIPTS AS EVIDENCE.—Receipts for payment of money are *prima facie* evidence of payment thereof, though open to contradiction, and the burden of overcoming the presumption devolves upon the party giving the receipt.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris,* Judge; affirmed.

*T. N. Robertson, A. J. DeMers, James E. Hogue, A. W. Fulton* and *George R. Allen,* for appellant.

*J. A. Sherrill,* for appellee.

HUMPHREYS, J.   This appeal is from a judgment in the sum of $5,208.30, including interest to the date thereof, rendered by the circuit court of Pulaski County, Third Division, in favor of appellee against appellant, upon a beneficiary certificate of insurance issued on the 25th day of October, 1923, by appellant, a fraternal beneficiary association, in consideration of an annual premium of $113.75, to Samuel A. Punch, who died on the 25th day of September, 1924.   Appellee was the beneficiary named in the policy.

Many issues were joined in the pleadings, and a very lucid, edifying brief has been filed by learned counsel for appellant in presentation of the points of law growing out of the several issues joined, but, for the purposes of this appeal, we deem it necessary to discuss one issue only, as that issue is determinative of the case. The issue referred to is whether the insured paid an annual premium of $113.75 when the policy was delivered

to him. This issue was submitted to the jury on proper instructions, and, under the well-established rule governing appeals to this court, appellant is bound by the adverse verdict and judgment, if supported by any substantial evidence. The policy sued upon was not found for some time after the death of the insured. When found, a receipt was attached thereto, signed by the district manager of appellant, for $113.75, dated November 9, 1923, the date the policy was delivered to and accepted by the insured. This was the correct amount of the annual premium.

The district manager testified that, on October 25, 1923, pursuant to agreement, he presented the $5,000 policy with receipt attached for the annual premium of the insured, and left them for his inspection; that the insured discovered that the policy contained an error concerning the lodge to which he belonged; that he procured the policy, left the receipt with the insured, and returned it to the home office for correction; that, after being corrected and returned, he took the policy back to the insured; that the insured had obtained other insurance in the mean time, and did not feel able to carry the $5,000 policy, but that he finally prevailed upon him to keep it; that the insured paid him $68 at the time, for which he issued a receipt; that he failed to take up the first receipt which he had left with him for $113.75; that he explained to the insured that, as the $68 did not cover the premium for six months, he would have to retain it and pay the premium monthly out of same; that he delivered the policy the second time with the $68 receipt on November 9, 1923; that he paid the monthly premium out of the $68 payment until exhausted; that he was away on a vacation in June, and did not pay the premium, which resulted in the automatic suspension of the insured, under the by-laws of the appellant; that on July 1, 1923, he paid the insured's premium out of his own money for June and July, which had the effect of automatically reinstating him; that the August dues were not paid, and insured was again suspended; that in September the

local financier notified witness that she was ready to send in her report, and asked about the premiums on insured's policy; that he told her to report him suspended and to reinstate him, and that, as soon as he came down town, he would give her the money; that, later, he called and gave her a check for $20.50, and was informed that the insured had been reinstated on the books on September 18, 1924, but that she had not entered the payment on the cashbook; that, four or five days later, he was in the office, and the financier said that, to make the entries in the cashbook come in proper order, she had changed insured's reinstatement date to September 23; that she had not cashed the check, so the witness took it up and gave her the money instead; that, under his contract, he received the first eleven months premiums on policies as commissions, and that, after insured was reinstated the last time, and the head office had received the report from the local financier to that effect, he received a letter from the head office showing payment of his commissions on the insured's certificate; that, after the death of the insured, his wife, the appellee herein, refunded the premiums he had advanced for the insured, amounting to $40.25; that he did not believe the home office would have paid him the commission if it had known the last $20.50 was paid after the insured's death.

The financier of the local council testified that the insured was suspended in June, 1924, and reinstated the following month; that the former district manager paid the June and July assessments out of his own money; that, on the 18th day of September, the former district manager told her, over the telephone, to reinstate the insured, who had failed to pay the August dues, and that he would bring the money in; that, acting on the former manager's promise, she reinstated insured upon the book without receiving the money, and afterwards changed the date from the 18th to the 23d of September; that the insured died on September 25, and that the manager brought the money to her on the 26th day of September, after insured's death.

The by-laws of appellant were introduced by Mr. Abrahams, which provided that assessments of members are due on the first day of the month, and must be paid on or before the last day of the month, and, if not paid, the insured shall stand suspended without notice; also, that the insured may be reinstated within sixty days by paying up all arrearages, provided the insured is in good health at the time of making payment for reinstatement; also, that the association shall not be bound by any irregularity, neglect or illegal actions of any of its subordinate council or any of its officers.

The original certificate or policy and the receipt for $113.75 were introduced in evidence, and have been brought to this court for inspection. The certificate or policy bears date of October 25, 1923, but was apparently signed by the district manager and the insured on the same date said receipt was signed. The receipt was signed on November 9, 1923, being the date on which the policy was delivered. This is inferable from the fact that the same color of ink was used by the manager and the insured in signing the policy which the manager used in signing the receipt. The insured did not leave Little Rock for California, where he was injured and died, until the 14th day of August, 1924. He was not notified by the manager or financier that he was or had been in default in the payment of his assessments or premiums.

We think the conflict in the book entries, with the testimony of the manager and financier as to when the payments or assessments or premiums were actually made, the change of entries in the books, the failure of the manager to call upon the insured for his assessments or premiums after the $68 was exhausted, and the date of the receipt on November 9, 1923, instead of October 25, 1923, so as to correspond in date with the policy, furnish warrant to the jury in drawing the inference that the full annual premium of $113.75 was paid when the policy was delivered on November 9, 1923, as indicated by the receipt. The receipt is a very strong piece of evidence itself to the effect that the amount specified

therein was paid when same was executed and delivered to the insured.

In speaking of receipts for the payment of money and their effect, this court said, in the case of *Continental Gin Co.* v. *Benton,* 104 Ark. 367, 149 S. W. 528, that:

"Receipts of payment are *prima facie* evidence thereof; they are open to explanation and contradiction, but the burden of overcoming the presumption and *prima facie* case and making the explanation devolves upon the party. giving the receipt."

And in the case of *Fidelity Mutual Life Ins. Co.* v. *Click,* 93 Ark. 162, 124 S. W. 764, said:

"The introduction of the receipt, properly signed, raised a presumption of payment within the terms of the receipt and cast the burden of overcoming the presumption by affirmative proof of nonpayment. Appellee introduced no other proof of payment, and perhaps had none, as the person shown by the face of the receipt to have made the payment was then dead. This presumption reached to every available mode of payment, and, in order to overcome it, the burden was on appellant to close up by affirmative proof every avenue through which the payment could have been made."

In view of what has been said with reference to the testimony and the rules just quoted, we think the evidence. amply sufficient to sustain the verdict and judgment.

No error appearing, the judgment is affirmed.