NATIONAL LIFE COMPANY *v.* BRENNECKE.

4-5031

Opinion delivered April 18, 1938.

E. C. *Cordy* and T. A. *French,* for appellant.

*Harrison, Smith & Taylor,* for appellee.

DONHAM, J. The appellant, National Life Company, on July 3, 1911, issued a policy in the sum of $2,000 on the life of Carl F. Brennecke, husband of M. Belle Brennecke, appellee. The insured paid all premiums and assessments on the policy for twenty-five years. A few days prior to July 1, 1936, the company gave notice to the

insured that on the 1st day of July, 1936, the quarterly premium in the sum of $8.75 would be due and payable. This notice contained a statement to the effect that when the insured remitted directly to the home office the notice should be returned with the remittance. The notice contained the following statement: "This notice when stamped 'Paid' by any authorized depository bank on or before July 31, 1936, or by the home office, will be a regular receipt." It also contained the following direction: "When remitting direct to the home office return this notice."

On the 29th day of July, 1936, the insured undertook to pay his quarterly premium in pursuance of said notice and, finding that the postoffice had closed for the day and that he was unable because thereof to purchase a postoffice money order for the amount of the quarterly premium, he applied to his neighbor, Mrs. T. F. Garrard, and paid to her $8.75 in money and for said payment obtained her check payable to his order in said amount, said check being drawn on the Piggott State Bank, which check he indorsed and thereby made it payable to the order of the National Life Company, appellant here. The check and the premium notice were mailed to the home office of the appellant in Des Moines, Iowa.

Upon receipt of said check the insured's account was credited with the amount of the premium, and the premium notice was marked "paid" by the cashier of the company, T. M. Douglas, and returned to the insured. The evidence of payment shown on the notice which was returned to the insured is as follows: "Paid, Nat. Life Ass'n, Nat. Life Co., T. M. Douglas, Cashier."

It will be noted that the notice was marked "paid" by the cashier of the company; that there were no conditions or restrictions shown; and that, therefore, the notice marked "paid" by the cashier constituted a regular and unconditional receipt for the payment of the quarterly premium.

On August 13, 1936, the appellant company, through its assistant secretary, notified the insured by letter that the check sent to it on the 29th day of July, 1936, had not

been honored. Immediately upon receipt of this letter inclosing the check, the insured on the 17th day of August, 1936, wrote appellant as follows: "I am enclosing herewith postoffice money order for $8.75 to cover my last insurance premium (quarterly premium due July 1, 1936)."

When the company returned the check to the insured, it explained that the check had been returned marked "Insufficient Funds." The company stated to him that his policy had lapsed for failure to pay the premium; and that a blank was being enclosed for reinstatement, telling him that he could be reinstated if his application was approved by the company's medical director. He did not immediately go to the physician to whom the company directed him for examination, but, instead, purchased a postal money order and forwarded it as hereinabove stated. However, on the 29th day of August, 1936, he did go to the physician and was examined. Later, on the 3d day of September, 1936, the company returned said postal money order to the insured and advised him that his application for reinstatement had been declined by its medical director. Thereafter, at least on two occasions, the insured wrote the company complaining that his application for reinstatement had not been approved. The company answered each letter, stating that it was impossible under the circumstances for the company to approve the application for reinstatement. In one of these letters to the company the insured wrote: "I consider under such circumstances the company should not have even asked me for a medical examination."

The insured died on December 23, 1936, and notice of his death was given to the appellant by letter on January 4, 1937. On January 6, 1937, the appellant replied to this letter, denying liability.

On the 11th day of February, 1937, suit was instituted on the policy in the circuit court for the eastern district of Clay county. Later when the case came on for trial, a jury was waived, and by agreement of the parties, the issues of fact and law were submitted to the court, sitting as a jury. The court found for the plaintiff upon the

issues of both law and fact and rendered judgment against the defendant in the sum of $1,975, together with interest, penalty and attorney's fees. No question is raised on this appeal with reference to the allowance of the statutory penalty or attorney's fees.

A motion for new trial was filed by appellant, same was overruled, and an appeal was prayed and granted to this court.

The question here involved is whether the appellant had a legal right to declare the policy lapsed for the nonpayment of premium due July 1, 1936, and payable at anytime during the month of July. In deciding this question, it will be necessary to determine whether the check sent by the insured July 29th in payment of the premium was actually accepted by the company as payment, and whether, in issuing its unconditional official receipt evidencing payment, it thereby waived its right to declare a forfeiture of the policy, even though the check was later dishonored by the bank upon which it was drawn.

It is admitted by appellee that the general rule of law is that the mere receipt of a check will not prevent a forfeiture of a policy for nonpayment of premium; but it is strongly contended that there is an exception to the rule which is as well defined as the rule itself, the exception being that if the insurer receives and accepts a check as payment of a premium due and issues its official receipt evidencing the payment, it thereby waives its right to declare a forfeiture of the policy, even though the check is dishonored by the bank upon which it is drawn.

The exception to the rule is stated in 14 R. C. L., § 136, p. 964, as follows: "Generally, it may be said that, where accepted as such, payment may be accompanied by the delivery to the insurer of a draft, and where this is done the effect of payment is not destroyed by the fact of failure of the drawer after the draft had been received by the insurer; or payment may be made by the delivery of the personal check of the insured, if it is accepted as payment."

In the case of *Mutual Benefit Life Insurance Co.* v. *Chattanooga Savings Bank*, 47 Okla. 748, 150 Pac. 190, L.

R. A. 1916A, 669, the Supreme Court of Oklahoma held that the premium stipulated in a life insurance policy to be paid by the insured is not a debt and that the strict rule governing the payment of debts by check or draft does not control the payment of such premium; and that while the insurance company has the right to demand payment in cash, it also has the right to waive the payment in cash and to accept a check or draft in payment; and that if it does so, it cannot void the policy for failure to pay the check or draft when it is presented for payment. In this case a bank draft was sent to the company in payment of an insurance premium, which draft was received by the company on the last day of grace and was deposited to the credit of the company on the following day and presented to the bank upon which it was drawn four days later and protested because the bank had closed in the meantime. The insured died on the day following the deposit of the draft and prior to its protest. The court held that the premium was paid and that the policy was in full force and effect at the time of the death of the insured.

In the case of *Travelers Insurance Co.* v. *Brown,* 138 Ala. 526, 35 So. 463, it was held that where all prior premiums have been paid by checks sent through the mail, the insured had a right to believe that, by conforming to this custom, it would be effectual to protect him against a forfeiture, and that the insurer could not claim a forfeiture where the insured had sent a check in ample time to have reached the agents, although it was not received; it appearing that as soon as the insured learned of this fact he sent a draft for the amount of the premium.

In the instant case the check sent in payment of the premium was good at the time it was drawn; but at the time it was presented for payment the account on which it had been drawn had been reduced, through no fault of the insured, to the extent that there were not sufficient funds to pay the check. The check was returned to the company stamped in such manner as to show that payment had been refused on the ground of insufficient funds. The company wrote the insured, notifying him of the

fact that payment of the check had been refused for want of sufficient funds, returning the check to the insured. Upon receipt of this information, he immediately purchased a postoffice money order and sent same in payment of the premium. The company would not accept the payment, but returned it to the insured, demanding that he stand a medical examination to ascertain whether he was an insurable risk.

It has been held in numerous cases that the fact that there are not sufficient funds in the bank upon which a check is given to cover the amount does not prevent its operating as a payment of premiums, especially where the insurer or its agent has dealt with the check in such manner as to indicate an intention to receive it as payment.

In the case of *Northwestern Life Assurance Co.* v. *Sturdivant*, 24 Tex. Civ. App. 331, 59 S. W. 61, the court held that where a check was accepted and an absolute receipt for the premium was issued, and where the check was deposited as the funds of the company, and not simply for collection, and where the check was not paid when presented for payment, but protested, that even though it was not the intention to accept the check in payment of the premium, and that the premium was not to be regarded paid until the check was honored, the acceptance of the check in this manner would necessarily be an extension of time and necessarily involved a waiver of the provision of the policy requiring the premium to be paid in cash on or before a given date.

In the case of *MacMahon* v. *United States Life Insurance Co.*, 128 Fed. 388, 68 L. R. A. 87, it was held that the sending of renewal receipts by an insurer upon receiving a bank draft to its order for the premium, constitutes a renewal of the insurance for another period, which cannot be repudiated by the insurer upon the dishonor of the draft because of the failure of the drawer after the draft had been received by the insurer.

The general rule appears to be that the receipt of a check will not prevent a forfeiture of the policy for non-payment of the premium; however, if the check is ac-

cepted in payment of the premium, even though it turns out to be worthless, there is such a payment as will prevent a forfeiture.

In 2 Joyce, on Insurance, p. 2256, this being a standard authority, it is said: "The application of this general rule to the payment of premiums is, however, subject to exceptions and qualifications, for a check, draft, or note, may be accepted under such circumstances as to clearly indicate that a payment of the premium was effected thereby, at least so as to continue the policy in force and preclude a forfeiture, and this is so held even though said check, draft, or note, be not paid when due or be dishonored. Again, although the insurer has the right to demand cash in payment of a premium, it may waive such right and accept the payment notes, checks, or drafts, or any other thing of value."

In the case of *Olga A. Martin* v. *New York Life Insurance Co.*, 30 N. M. 400, 234 Pac. 673, 40 A. L. R. 406, the Supreme Court of the state of New Mexico held that where a worthless check is sent by the insured to the insurer with which to pay a premium due upon a policy, it may be accepted by the insurer as payment of such premium, and when so accepted the right to declare a forfeiture for nonpayment of such premium is waived, even though such check is dishonored by the bank upon which it is drawn. In this case, the court further held that where the insurer receives the personal check of the insured, tendered in payment of a premium due upon a policy, and the insurer issues and delivers its official receipt acknowledging payment, the burden rests upon it to show that such check was not received as payment, but for collection.

In the case of *Fidelity Mutual Life Insurance Co.* v. *Click*, 93 Ark. 162, 124 S. W. 764, it was claimed by the company that a receipt for the annual premium due on an insurance policy had been executed and delivered to the insured by mistake; that this was done as the result of a clerical error made by one of the employees of the company in mistaking the record of the payment of the premium on another policy which had been paid for the

premium on the policy in controversy. It was not claimed by appellee that the premium was paid, unless the receipt itself was sufficient to establish that fact. After the death of the insured, the beneficiary in the policy instituted suit to recover the amount of the policy. No proof of the payment of the premium was introduced, except the receipt in question. In passing on the effect of this receipt, the court said:

"She rested merely on the presumption of payment raised by the receipt. This presumption reached to every available mode of payment, and in order to overcome it the burden was on appellant to close up by affirmative proof every avenue through which payment could have been made."

In the Click case, witnesses for the company attempted to explain that the receipt had been delivered by mistake; and although there was much evidence to this effect, and although the appellee rested merely on the presumption of payment raised by the receipt, this court held that the situation thus presented made a question of fact for the jury to determine whether the presumption of payment had been overcome by such evidence.

In the case of *Security Benefit Association* v. *Punch,* 173 Ark. 572, 292 S. W. 994, this court held that a receipt for payment of an insurance premium was *prima facie* evidence of payment thereof, and, while open to contradiction, the burden of overcoming the presumption devolves upon the party giving the receipt.

The appellant and its predecessors in the instant case had been doing business with the insured over a period of more than twenty-five years; and all of the premiums and assessments due under the policy in question had been paid in full. On previous occasions the insured had remitted by check, and in some instances had remitted by money order; but in any event all premiums and assessments had been paid for twenty-five years or more. It is, therefore, reasonable to assume that the appellant was satisfied that the insured would make good his indorsement upon the check sent by him in payment of the premium. The company, no doubt, felt that it was justified

in accepting said check as payment. It, therefore, issued its receipt, or rather stamped as "paid" the notice which had been sent with the check and returned same to the insured. Thirteen days later it returned said check to the insured, stamped in such manner as to show that it had been dishonored, when presented for payment, for want of sufficient funds. Immediately appellee forwarded a postoffice money order for the amount of the premium. Under the circumstances shown in evidence, we must hold that there was evidence, proper for the court sitting as a jury to consider, to the effect that the appellant accepted the check as payment of the premium, and to the effect that it waived its right to contend that the premium had not been paid. The company could have advised the insured that the check was accepted conditionally, that is, for collection only; but it did not do so. If it had advised the insured that the check was being accepted in payment only on the condition of its being honored when presented for payment, then, of course, the premium could not have been regarded as paid. On the contrary, as stated, it issued its regular receipt, advising the insured that the premium had been paid within the time prescribed by the policy.

Under the circumstances existing in the instant case, the issuance and delivery of the receipt as heretofore stated placed the burden of proving that the acceptance of the check was not intended as payment of the premium on the company. Premiums had on previous occasions been paid by check. There is no contention made that the cashier of the appellant company had no authority to accept the check sent by the insured as payment of the premium. The immediate issuance and delivery of the receipt must be regarded as strong evidence to the effect that such check was accepted as payment of the premium; and the evidence to the effect that the check was so accepted is such that a jury trying the issue would have been warranted in finding that the company did, in fact, accept the check in payment; and furthermore that it waived any right to declare a forfeiture of the policy, notwithstanding the check was dishonored.

The cashier of the company, who received this check and who stamped the notice "paid" and returned it to the insured, was not called as a witness. Certainly, he would have been in a position better than anyone else to have testified whether the check was received in payment of the premium or whether, on the other hand, it was received as conditional payment. No testimony was offered by the appellant, except the statement of the assistant secretary to the effect that it had no previous agreement with the insured to accept checks in payment of the premium. Even he does not deny that the check was, in reality, accepted as payment. This court has many times held that where it is within the power of a party to call a witness who possesses special knowledge of a transaction involved in suit, and the party whose duty it is to call the witness fails to do so, an inference follows that the testimony which would have been given by such witness would have been unfavorable to the party failing to call him. *Lynch* v. *Stephens*, 179 Ark. 118, 14 S. W. 2d 257; *Ramey* v. *Fletcher*, 176 Ark. 196, 2 S. W. 2d 84; *Smith* v. *Wheat*, 183 Ark. 169, 35 S. W. 2d 335; *Sparkman Hardwood Lumber Co.* v. *Bush*, 189 Ark. 391, 72 S. W. 2d 527.

We recently held in the case of *Sovereign Camp, Woodmen of the World*, v. *Mays*, ante p. 876, 115 S. W. 2d 851, as we had many times before held, that forfeitures are so odious in law that they will be enforced only where there is the clearest evidence that such was the intention of the parties.

There was no fraud practiced upon the company in the instant case. The insured paid out his money for the check he sent the company in payment of the premium. At the time, the drawer of the check had sufficient funds in the bank with which to pay it. As evidence of the good faith of the insured immediately upon notice that the check had been dishonored, he procured and forwarded to the company a postoffice money order for the amount of the premium.

The company contends that the insured acquiesced in its cancellation of the policy. But in the last letter

written by the insured to the company, he stated that he did not intend to be deprived of his rights and that, if necessary, he would apply to the courts for relief. The rights of the parties were fixed as of the date of the acceptance of the check as payment, if, in fact, it was so accepted; and, under the circumstances, we hold that it was a jury question as to whether it was thus accepted.

The trial court, sitting as a jury, found the issues of law and fact in favor of the appellee. We hold that it was justified in so finding. Upon what particular fact, or facts, the court decided in favor of appellee, the record does not disclose; but there were facts shown in evidence that justified the court in so finding. The findings of the trial court, sitting as a jury, are as conclusive on this court as the finding of a jury.

From what we have said, it follows that the judgment must be affirmed. It is so ordered.

GRIFFIN SMITH, C.J., concurs.