394 P.2d 988

William H. LANG and Francis X. Murphy, Plaintiffs-Appellants,

v.

Alfonso Martinez CRUZ and Clancy Gomez, Defendants-Appellees.

No. 7402.

Supreme Court of New Mexico.

Aug. 24, 1964.

J. Lee Cathey, Carlsbad, Bean & Snead, Roswell, for appellants.

Brown & Brainerd, Roswell, for appellees.

CHAVEZ, Justice.

Appellants, William H. Lang and Francis X. Murphy, plaintiffs in the court below, appeal from a summary judgment in favor of appellee Clancy Gomez.

Appellants' amended complaint, which is in two counts, alleged that on July 23, 1962, at about 8:55 p.m., appellants were riding in a pickup truck driven by Zackay T. Robinson in a northerly direction on U. S. Highway 285 at a point about 3.3 miles south of Dexter, New Mexico; that appellee Alfonso Martinez Cruz was driving a farm tractor owned by appellee Gomez and so negligently operated the tractor as to cause a head-on collision between the vehicle driven by Robinson and a vehicle driven by one Francisco Chaves Solis; that at the time of the accident, appellee Cruz was employed by appellee Gomez and was driving the tractor in the course and scope of his employment; that as a proximate result of the negligence of appellee Cruz, appellants received severe and permanent injuries. Each appellant also alleged that the manner of operation of the tractor by appellee Cruz, at the time and place and under the circumstances, was unlawful, reckless and grossly negligent.

In separate answers, appellees Cruz and Gomez admitted the residence of the parties, the time and place of the accident and that appellee Cruz was employed by appellee Gomez, but denied all other allegations.

contained in appellants' complaint. Appellee Gomez then filed a motion for summary judgment, stating as grounds: That appellants seek recovery against him as the employer of appellee Cruz; that on the day of the accident and at all times material, appellee Cruz was employed as a farm laborer for the purposes of irrigating, chopping and picking cotton; that appellee Cruz was expressly instructed by appellee Gomez not to operate farm machinery of any type, including tractors, at any time; that on the date of the accident and at all times material, appellee Cruz was acting outside the scope of his employment in operating any tractor belonging to appellee Gomez; that, as shown by the depositions on file and affidavits attached, appellee Cruz was operating appellee Gomez' tractor without the knowledge or consent of Gomez, either express or implied, and in direct violation of express instructions by Gomez; that the pleadings on file show the injuries and damages complained of occurred at a point some distance from the place of employment of Cruz, said point being well outside the area of employment.

Attached to the motion for summary judgment were affidavits by appellees Cruz and Gomez relating the following: Alfonso Martinez Cruz is a Mexican National who was employed by Clancy Gomez as an agricultural worker, whose duties consisted of irrigation of alfalfa, chopping and picking cotton, and stacking bales of hay; that in November or December, 1961, all Mexican Nationals in the employ of appellee Gomez were instructed by Gomez that they were prohibited from operating any farm machinery, including tractors; that these instructions were repeated by the Chaves County Farm and Livestock Bureau, Inc., who, in January 1962, asked all Mexican Nationals who worked for Gomez to sign a form, printed in both English and Spanish, stating that they understood that they were not to drive any farm machinery, tractors or other equipment of a related nature.

On July 23, 1962, the date of the accident, appellee Cruz and another Mexican National, Jose Cardona Gallegos, were taken to the alfalfa field at about 6:00 p. m. and instructed to irrigate until about 11:00 p. m., when appellee Gomez would return and they would assist Gomez in baling hay. While irrigating, Cruz found that one of his boots had developed a rip in the heel causing a leak. Gallegos told Cruz that there was another pair of boots at the "bracero" headquarters, about a mile and a half distant. Appellee Cruz, in his affidavit, states:

"* * * A little before 8:30 o'clock p. m., I walked over to the tractor which was parked in the hay field and which was hooked up to the hay baler. I unhooked the tractor from the hay baler and I noticed that there were no hay hooks on the hay baler at that time. The tractor has a manual igni-

tion switch and does not require a key to start. After unhooking the tractor, I started it and drove from the field to the house where I was living. Mr. Gomez was not in the field at the time and I didn't ask anyone about taking the tractor and I am sure that no one knew that I had taken it. I had not used the tractor before at any time.

"I drove to the house where I was staying and changed boots. I looked for the hay hooks there but did not find any. Mr. Gomez usually had the hay hooks with him or there was a pair on the baler, but I thought that I would just check to see if there were some in the house that we might use later. I had never been asked to bring hay hooks to the field before and nothing was mentioned about them on this particular day. I later learned that Mr. Gomez had a pair of hay hooks in his pick-up.

"After changing my boots, I again started the tractor and was driving back toward the alfalfa field when the accident occurred between the automobile driven by Mr. Solis and the pick-up driven by Mr. Robinson.

"I knew, at the time I took the tractor in the field, that I was acting against the express orders of Clancy Gomez and that I was not supposed to drive the tractor at all."

On January 8, 1963, appellants filed a response to the motion for summary judgment, in which they reiterated their position that appellee Cruz was acting within the scope of his employment, even though it may have been in disobedience of express instructions of appellee Gomez. On January 11, 1963, a hearing was held on this motion, in which appellants introduced the transcript of an inquest held over the bodies of Francisco Chaves Solis and Erminda Salazar; and the depositions of appellees Cruz and Gomez which had been taken in cause No. 26026 in the district court of Chaves County, entitled Enadine Romero, Administratrix et al v. Zackay T. Robinson, et al. The transcript of the inquest held July 24, 1962, reveals that appellee Cruz was called as a witness and testified as follows:

"Q. Did you have occasion to be on U. S. Highway 285 last night, July 23rd, 1962 about three miles South of Dexter?

"A. I did.

"Q. What were you doing there?

"A. I took the tractor and went after some hay hooks and was going to start bailing later on that night."

In his deposition, appellee Cruz, after testifying as to his job experience and ability as a driver of motor vehicles, stated:

"Q. Well didn't you know then that you were violating the law when

you took this tractor and went back to the camp to get the hay hooks and the boots?

"A. Yes Sir, I did.

" * * *

"Q. Well did you go back for hay hooks or for another boot?

"A. Both things.

"Q. You knew you didn't have the hay hooks before Mr. Gomez left didn't you?

"A. No, Sir.

"Q. You weren't carrying hay hooks around out there where you were irrigating, were you?

"A. There is times when the hooks are kept in the pick-up on the bailing machine, I went to the machine and the hooks weren't there.

" * * *

"Q. I said Mr. Gomez knew you were going to have to have hay hooks if you were going to stack hay?

"A. Yes, Sir.

"Q. And did he know about your boot being ripped?

"A. No, Sir.

"Q. You didn't tell him about that?

"A. No, the boot was all right when Mr. Gomez left.

" * * *

"Q. Did he tell you that there weren't any hay hooks there when he went back to Hagerman?

"A. No, Sir, he didn't.

"Q. And so, in order to help with the hay bailing which was to start at 11:00 o'clock that evening, you knew that you were going to have to get some hay hooks?

"A. Yes, Sir.

"Q. And you also knew that you were going to have to get another boot to replace the one which had ripped?

"A. Yes, Sir.

"Q. And that was the purpose of your trip back to the camp that night with the tractor was to get the hay hooks and another pair of boots?

"A. Yes, that was the whole idea.

"Q. And at the time of the accident you were going back to the place where you were going to bale the hay?

"A. Yes.

"Q. And you had with you the hay hooks and the boots?

"A. I had the boots, the hooks were not at the house.

"Q. You didn't find the hay hooks at the house?

"A. No, Sir.

"Q. But you had gone there to get them?

"A. Yes.

"Q. And you were going to use these boots in you work when you got to the place were you were working?

"A. Yes, Sir."

On cross-examination, appellee Cruz further testified:

"Q. The boots that you were wearing, what were they used for?

"A. Irrigation.

"Q. When the boot got a rip in it, what did that do?

"A. Water gets inside the boots.

"Q. Does that make it uncomfortable?

"A. No.

"Q. Could you have kept on irrigating the way it was?

"A. Yes, I could have continued however it would have gotten my feet wet to the extent that it would have made it uncomfortable for me.

"Q. So that the changing of the boots was just to keep your feet dry and didn't prevent your work?

"A. That is right.

"Q. Did you you ever find out where the hay hooks were that night?

"A. Afterwards I found out the hooks were in the pick-up."

Based upon these affidavits, depositions and transcript of the inquest, the trial court granted summary judgment to appellee Gomez and made the following finding of fact:

"2. That there is no genuine issue as to any material fact in this cause and the Defendant, Clancy Gomez, is entitled to a judgment as a matter of law."

Appeal timely followed with appellants relying on one point for reversal, to-wit:

"I. That at time of the accident on July 23, 1962, the defendant Alfonso Martinez Cruz was acting within the scope of his employment in operating a tractor belonging to the defendant Clancy Gomez."

■ Appellants rely principally upon White Auto Stores, Inc. v. Reyes, (10 CCA 1955), 223 F.2d 298, which, they contend, stands for the proposition that a servant, even though he commits an act specifically forbidden by his master, may be acting within the scope of his employment. In White Auto Stores, Inc. v. Reyes, supra, the court, relying upon Childers v. Southern Pacific Company, 20 N.M. 366, 149 P. 307, said:

"* * * the rule that an act of an employee is within the course of his employment if, one, it was something fairly and naturally incident to the master's business and, two, if it was

done while the servant was engaged upon his master's business with a view to furthering the master's interest, or from some impulse which naturally grew out of or was incident to an attempt to perform the master's business and did not arise wholly from some external, independent and personal motive on the part of the employee to do the act upon his own account. * * *"

Thus appellants argue that, although appellee Cruz took the tractor in violation of his orders, he took it to get hay hooks, and that this, under the White Auto Stores definition, raises an inference that the intent of appellee Cruz was to further his master's interest. They assert, as stated in White Auto Stores, Inc. v. Reyes, supra, that the question of whether a servant was acting within the scope of his employment when an accident occurs as a result of his negligence is a question of fact. Therefore, they say that, under our rule for summary judgment, as set out in Hewitt-Robins, Inc., Robins Conveyors Division v. Lea County Sand and Gravel, Inc., 70 N.M. 144, 371 P.2d 795, the trial court erroneously granted summary judgment. However, even under the rule as announced in that case, where, as here, there is no dispute concerning the facts, it is not error for the trial court, in passing on a motion for summary judgment, to determine whether a finding based thereon, that the conduct was within the scope of employment, could be supported in law. If the answer is in the negative, the trial court's action in granting summary judgment in favor of appellee Gomez must be affirmed.

In the Childers case, appellant railroad company employed a watchman whose duties were to watch and guard the yards, prevent trespasses, and prevent trespassers from boarding trains. Plaintiff-appellee started to go from the business district of Deming across the railroad yards to the depot to see his landlord. Appellee was accosted in the yards by the watchman, who accused him of being a trespasser. Upon appellee's denial, the watchman knocked him to the ground, severely beat him, and procured appellee's arrest. The question was raised as to whether or not the watchman was acting within the scope of his employment and, in affirming the district court, Chief Justice Roberts stated the following definition of "course of employment," as taken from Vol. 2, Mechem on Agency, 2d Ed., § 1960:

" 'But in general terms it may be said that an act is within the "course of employment" if (1) it be something fairly and naturally incident to the business, and if (2) it be done while the servant was engaged upon the master's business and be done, although mistakenly or illadvisedly, with a view to further the master's interests, or from some impulse or emotion which

naturally grew out of or was incident to the attempt to perform the master's business, and did not arise wholly from some external, independent, and personal motive on the part of the servant to do the act upon his own account.' "

We again refer to the above authority and note that § 1960 of Mechem on Agency is a subsection under the following classifications:

"CHAPTER V—THE DUTIES AND LIABILITIES OF THE PRINCIPAL TO THIRD PERSONS.

"5.—Liability for Wilful or Malicious Acts of Servant.

"§ 1957.IV.—Master's liability for malicious acts in other cases.

"§ 1960—Illustrations."

The Childers' definition has been applied in its entirety only where there has been a wilful or malicious act by the servant. In Archuleta v. Floersheim Mercantile Co., 25 N.M. 632, 187 P. 272, 40 A.L.R. 199, it was contended that the servant intentionally started a fire; in Gutierrez v. Montosa Sheep Co., 25 N.M. 540, 185 P. 273, the tortious act was a trespass and a conversion; in Miera v. George, 55 N.M. 535, 237 P.2d 102, the tortious act was an assault and battery; and in McFatridge v. Harlem Globe Trotters, 69 N.M. 271, 365 P.2d 918, 89 A.L.R.2d 1154, plaintiff contended that defendant negligently failed to protect him from the intentional throw of a basketball by one of defendant's employees. In Massey v. Beacon Supply Company, 70 N.M. 149, 371 P.2d 798, we noted the close similarity between the test for re-entry into employment and the Childers test, both tests requiring the common element of intention to serve the master's business. See also, Restatement of the Law, 2d Ed., Agency, § 237.

In Mechem on Agency, Ch. V, supra, "3. Liability for Negligent Act of Servant or Agent, § 1879," we note the following quotation:

" * * * This term 'course of his employment,' like the corresponding term 'the scope of the authority' in cases of agency, and 'the scope of the business' in cases of partnership, is one not capable of precise definition although many attempts have been made to define it. It is largely a question of fact and its determination may vary in each case in view of the particular circumstances. The utmost that can ordinarily be said is that a servant is acting within the course of his employment when he is engaged in doing, for his master, either the act consciously and specifically directed or any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act or a natural, direct and logical result of it. * * *"

Restatement of the Law, 2d Ed., Agency, § 229, gives the following test in determining what conduct is within the scope of employment:

"§ 229. Kind of Conduct within Scope of Employment.

"(1) To be within the scope of the employment, conduct must be of the same general nature as that authorized, or incidental to the conduct authorized.

"(2) In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:

"(a) whether or not the act is one commonly done by such servants;

"(b) the time, place and purpose of the act;

"(c) the previous relations between the master and the servant;

"(d) the extent to which the business of the master is apportioned between different servants;

"(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;

"(f) whether or not the master has reason to expect that such an act will be done;

"(g) the similarity in quality of the act done to the act authorized;

"(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;

"(i) the extent of departure from the normal method of accomplishing an authorized result; and

"(j) whether or not the act is seriously criminal."

See also, Silva v. Haake, 56 N.M. 497, 245 P.2d 835.

The question before us, however, is not a question of the liability of a master for his servant's wilful or malicious acts; nor is it a question of the master's liability for a servant who has deviated and now seeks to re-enter his scope of employment; nor is it even a question of applying a test for determining what conduct comes within the scope of employment. We have here before us the question of the scope of employment of appellee Cruz, who disobeyed his master's instructions as to the operation of farm machinery.

In 57 C.J.S. Master and Servant § 570d(9), p. 312, the rule is stated as follows:

"(9) Disobedience of Orders or Instructions.

"If the act resulting in the injury was within the scope of the servant's employment, the master will be liable

therefor, although the act was in violation of his instructions or orders, but if a forbidden act is outside the class of service which the servant is employed to perform the act is outside the scope of employment and ordinarily no liability attaches to the master."

In Stone v. Commonwealth Coal Co., 259 Mass. 360, 156 N.E. 737, plaintiffs were injured by the negligent operation of a motor vehicle driven by one McDonnell, who was employed as a nightwatchman, in cleaning up the yard, and whatever odd jobs he was asked to do by his superior. He had no duty to drive cars outside defendant's coal yard. On the day of the accident:

"* * * McDonnell had finished his watch at the yard and was about to start for home when he recalled that the shipper, on the Saturday before, had told him to ask a friend who lived next door to him in Cambridge, and who sometimes had supplied the defendant with wood for its customers, to send over some wood. He knew that the wood was wanted early on Monday, yet he had forgotten to say anything about it to his friend. So he took a truck, then standing in the yard, drove to Cambridge, failed to find his friend, but, possibly, left an order for the wood, and, when the accident occurred, was returning to Boston where he intended to leave the truck at the defendant's garage. * * * No one gave him any authority or direction to drive any motor, and, on the Monday in question, no one knew he had taken this truck, or had gone away in it, for the purpose he had in mind."

Trial was held and a verdict rendered for plaintiffs, which was set aside and verdicts entered for defendants. In affirming the trial court's action, the supreme court of Massachusetts said:

"It is not enough, in order to establish liability, to show that the master has an interest in what is being done. It must also be made to appear that the servant whose act is in question has authority from the master to perform the class of service to which the act belongs. If the act is within the class, the master is bound, although the servant is forbidden to perform the particular act. Powell v. Deveney, 3 Cush. 300, 50 Am.Dec. 738; Barden v. Felch, 109 Mass. 154.

"Driving motor trucks upon the roads was not within the class of work for which McDonnell was hired. * * *"

In Rose v. Gisi, 139 Neb. 593, 298 N.W. 333, the employer Gisi ordered his truck driver Carter not to permit one Wascher to drive the employer's truck on a trip. Carter disobeyed his employer and permitted Wascher, who had been employed as a loader, to drive. An accident resulted

and suit was brought against Gisi, Carter and Wascher. Judgment was for plaintiff and, on appeal, the employer and the truck driver Carter won a reversal, while the judgment as to Wascher was affirmed. The court said:

"We think the fact that Gisi directed Carter not to permit Wascher to drive the truck is of importance in arriving at the foregoing conclusion. Disobedience of orders or directions by a servant does not always relieve a master from liability for his acts. If the act causing the injury is within the class of service for the doing of which the servant was employed, the master is bound, even if the servant was forbidden to perform the particular act. But if the act forbidden was outside the class of service which the servant was employed to perform, the doing of the act is outside the scope of his employment."

Accord, Nelson v. Pennsylvania Fire Ins. Co., 154 Neb. 199, 47 N.W.2d 432; Anno. 166 A.L.R. 877.

■ The evidence clearly shows, and there is no dispute, that all Mexican Nationals were forbidden by law to operate farm machinery after January 1962, and appellee Gomez had given orders accordingly; that appellee Cruz was aware of these orders and knowingly violated them; and that this was the first time he had disobeyed this particular order. We, therefore, hold that the driving of a tractor by appellee Cruz was clearly outside those classes of service for which appellee Cruz was employed to perform and, even though by the testimony an inference could be raised that appellee Cruz was attempting to further his master's business by going for hay hooks, unquestionably such actions were outside the scope of employment and the master could not be held liable.

Appellants, in their brief, contend there is a split of authority in this jurisdiction regarding the scope of employment; however, the cases cited by appellants for a contrary view all depend upon the master furnishing his servant a dangerous instrumentality and are not applicable in the instant case.

There being no error, the judgment of the district court is affirmed.

It is so ordered.

COMPTON, C. J., and MOISE, J., concur.