LEIGH WINHAM, INC. and Leigh WINHAM,
Individually *v.* REYNOLDS INSURANCE AGENCY et al

82-305                                        651 S.W.2d 74

Supreme Court of Arkansas
Opinion delivered May 31, 1983

*Friday, Eldredge & Clark,* by: *Michael G. Thompson* and *Timothy O. Dudley,* for appellants.

*Davidson, Horne, Hollingsworth, Arnold & Grobmyer, P.A.,* by: *Allan W. Horne* and *Virginia R. Williams,* Rule XII Law Student, for appellees.

*Laser, Sharp & Huckabay, P.A.,* for appellee National American Insurance Company of New York.

ROBERT H. DUDLEY, Justice. Appellants, Leigh Winham, Inc., an interstate trucking company, and Leigh Winham, individually, filed suit alleging that appellees, Reynolds Insurance Agency, Inc. and National American Insurance Company of New York, wrongfully denied insurance coverage and refused to pay a valid claim. Appellants in the alternative pleaded that appellee Reynolds Insurance Agency negligently failed to acquire the insurance. The trial court granted summary judgment in favor of both appellees. We affirm. Jurisdiction is in this Court pursuant to Rule 29 (1) (o).

A summary judgment is granted if there is no genuine issue as to any material fact that would preclude judgment in favor of the moving party as a matter of law. ARCP Rule 56 (c). A summary judgment is an extreme remedy; consequently, any proof submitted with the motion must be

viewed most favorably to the party resisting the motion and any doubts and inferences must be resolved against the moving party. *Talley* v. *MFA Mutual Ins. Co.*, 273 Ark. 269, 620 S.W.2d 260 (1981).

The facts, construed against the movants for summary judgment, are as follows. Appellant Leigh Winham, a California resident, and appellant Leight Winham, Inc., a California corporation, leased six trucking units to B. J. McAdams, Inc., an interstate hauler with offices in North Little Rock. An employee of McAdams suggested that appellants purchase their insurance through appellee Reynolds, a Little Rock agency. In late December of 1978, appellant Leigh Winham contacted John Reynolds, the principal of appellee Reynolds Agency, by telephone. The two did not know each other and had had no prior business dealings. Winham inquired about insurance, and Reynolds stated that he would calculate the premium and call him back. On January 2, 1979, Winham again contacted Reynolds and, according to Winham, Reynolds told him the total amount of the full year's premium, the extent of coverage, and the cost of the first installment on the premium. Winham stated that he informed Reynolds that he had to have coverage immediately and Reynolds told him that the insurance coverage would "be bound effective the day of the postmark." Winham mailed a check drawn on the corporate account to Reynolds on January 3, 1979. Upon receiving the check Reynolds had his bank contact the payor bank and, in so doing, discovered that appellant had insufficient funds in its account to clear the check. Reynolds then deposited the check in his own bank. On January 16, Winham was given notice by his back that his corporation's check would not clear. On January 20 Winham learned that one of his trucks had been involved in an accident. He called Reynolds to inform him of the claim and to tell him the check would be returned for insufficient funds. Winham asked Reynolds to redeposit the check. Reynolds was hesitant and Winham wired him the money which Reynolds refused to accept. Winham again phoned and stated that, "[Reynolds] told me that he was going to have to check with the insurance company to see when they wanted the insurance, when they wanted it dated, the date of the policy.

And I said, You mean you haven't bound my coverage? And he said well, he's got to check with them to see when they want the date of the policy dated. And then in the course of that week he also asked me, he said something about he was going to have to get a signed application, would I allow [an employee of McAdams] to sign the application for me."

In late January, 1979, Winham was informed that the claim was denied. In May 1979, Winham settled the claim against the tortfeasor who caused the accident.

The appellees moved for summary judgment on two grounds: (1) no insurance coverage was ever in force since appellants' check was dishonored; and (2) even if insurance was in force, the release admittedly given by appellants in settling their claim was a breach of the subrogation clause of the policy.

Appellants first contend that prepayment of the premium is not a condition precedent to coverage. However, our general rule is that "payment of the premium is ordinarily a condition necessary to the operation of a policy of insurance, and usually a provision to that effect is made in the policy." *Home Fire Ins. Co. of Okla.* v. *Stancell,* 94 Ark. 578, 127 S.W.966 (1910). Of course, we have exceptions to our general rule. For example, we recognize that effective oral binders are often issued prior to payment of the premium. *See* Ark. Stat. Ann. § 66-3219 (Repl. 1980); *Home Ins. Co.* v. *Moyer,* 252 Ark. 51, 477 S.W.2d 193 (1972). Also, policies are often sold on credit. *King* v. *Cox,* 63 Ark. 204, 37 S.W. 877 (1896); *Mann* v. *Charter Oak Fire Ins. Co.,* 196 F. Supp. 604, 609 (E.D. Ark. 1961).

The trial judge, after viewing the facts most favorably to the appellants, found that there was no dispute of a material fact and that all of the material facts were in favor of appellees' contention that Reynolds, the insurance agent, did not waive the ordinary condition precedent of payment of the premium by stating that "the insurance would be effective the day of the postmark," and then accepting the check.

The appellants contend that, even though the fact of Reynolds' statement and acceptance of the check is undisputed, reasonable men may reach different conclusions from those facts and so summary judgment was not proper. Summary judgment should be denied if under the evidence reasonable men might reach different conclusions from undisputed facts. *Runyon* v. *Reid,* 510 P.2d 943 (Okla. 1973); *Lang* v. *Cruz,* 74 N.M. 473, 394 P.2d 988 (1964).

Reynolds' statement establishes that there was no intention to extend credit to appellant Winham, an unfamiliar person. Had an intent to extend credit existed, Reynolds would have put a binder for insurance in effect immediately after the telephone conversation rather than when the check was mailed. *See Home Ins. Co.* v. *Moyers,* 252 Ark. 51, 477 S.W.2d 193 (1972). Therefore, it was not error for the trial court to grant summary judgment on the basis that prepayment of the premium was a condition precedent to coverage.

Appellants next contend that even if prepayment of the premium was a condition precedent, the summary judgment was improper because the issue of whether the appellees accepted the plaintiff's check as absolute payment was a question of fact. Appellants are correct that the resolution of this issue involves a question of intent. However, "[t]he law is well settled that receiving a check as payment for an insurance policy is conditional and will not prevent a forfeiture of the policy for non-payment of the premium. Of course, if the insurance company's acts indicate that receipt of the check is payment then such will justify a finding that the insurance company is bound." *Jones* v. *American Pioneer Life Ins. Co.,* 255 Ark. 474, 500 S.W.2d 748 (1973), *citing National Life Co.* v. *Brennecke,* 195 Ark. 1088, 115 S.W.2d 855 (1938); *see also, Security Benefit Association* v. *Punch,* 173 Ark. 572, 292 S.W. 994 (1927); *National Union Fire Ins. Co.* v. *Wright,* 163 Ark. 42, 257 S.W. 753 (1924). In this case, however, none of the insurance company's acts indicate that Reynolds intended to receive appellants' worthless check unconditionally as payment in order to bind the insurance company.

Nevertheless, appellants argue that the actions of Reynolds might enable reasonable men to reach a different conclusion. They contend that Reynolds, in addition to stating that coverage would be effective when the check was mailed, deposited the check even after he knew it would not clear appellants' bank. According to appellants this indicates an intent to accept late payment of the check. Then, they argue, even after the return of the check Reynolds did not deny that there was coverage. Reynolds stated he would have to check with the company to see when it wanted the policy dated. After the check had been returned, Reynolds asked if an employee of B. J. McAdams could sign an application. Finally, appellants argue that after the accident Reynolds told appellants they had no liabilty for the accident as it was caused by the tortfeasor.

Together, these actions would not lead to the conclusion that there was an intention to extend credit to appellant Winham, an unfamiliar person. Presentment of appellants' check to the payor bank was necessary to establish a dishonor of the check. In addition, the appellants might have placed funds in the account during the interval between the phone call and presentment for payment and the check then could have been good on its initial presentment. Therefore, presentment for payment is not inconsistent with a refusal to extend credit. The failure to expressly deny that appellants had coverage could not lead reasonable men to conclude that Reynolds intended to extend coverage under the facts of this case. Similarly, the fact that Reynolds stated that he would have to check with the company to see when the policy would be dated and Reynolds asking if an employee of B. J. McAdams could sign an application could not be found by reasonable men to relate back to the original mailing date, because these actions were in response to Winham's later assurances on January 20, 21 and 23 that he would wire the premium payment. We find no indication in Reynolds' statements of an intent to accept liability for appellants' insurance coverage. Since reasonable men could not reach different conclusions from the undisputed facts of this case, we agree that the appellees were entitled to a judgment as a matter of law.

Affirmed.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. My first disagreement with the majority opinion is that portion which reads, in regard to summary judgment, "However, here reasonable men. could not reach different conclusions."

I also disagree with that portion of the opinion which stated, "the law is well settled that receiving a check as payment for an insurance policy is conditional and will not prevent a forfeiture of the policy for non-payment of the premium." In the business world insurance is bought and sold over the telephone in many instances. An agent is authorized to give a telephone binder which immediately binds the insuring company. In such a case failure to pay the premium would not automatically cancel the binder.

There is a difference of opinion between the appellant and appellee as to whether a binder was issued in the case before us. This is clearly a controversy requiring the resources of the judicial system. If, as testified, the agent agreed by telephone to bind the company at the time a check was placed in the mail then there's certainly a question of fact. What has happened in the present case is that the trial court and a majority of this court have decided the facts adversely to the appellant without giving him an opportunity to present his argument to a jury. A valid controversy deserves its day in court. To deny such is to pull the rug out from under appellants' cause. I cannot say that appellants would prevail in a full blown trial, but they are certainly entitled to make use of the system set up by our Constitution and the Arkansas General Assembly. I would, therefore, remand for a trial on the disputed issued in this case.