In re HILYARD DRILLING COMPANY, INC., Debtor-in-Possession.

UNITED STATES FIDELITY AND GUARANTY CO., Plaintiff,

v.

HILYARD DRILLING COMPANY, INC., Defendant.

UNITED INSURANCE AGENCY, INC., Plaintiff,

v.

HILYARD DRILLING COMPANY, INC., Defendant.

Bankruptcy No. ED 85–10M.   CMS Nos. 85–120M, 85–176M.

United States Bankruptcy Court, W.D. Arkansas, El Dorado Division.

June 7, 1985.

---

Susan Gunter, Little Rock, Ark., for debtor.

Isaac A. Scott, Little Rock, Ark., trustee.

Ian W. Vickery, El Dorado, Ark., Gregory M. Hopkins, Little Rock, Ark., for United Insurance Agency, Inc.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On January 25, 1985, Hilyard Drilling Company, Inc., (Hilyard), filed a voluntary petition in bankruptcy under the provisions of Chapter 11 of the Bankruptcy Code. For several years prior to the filing of the petition, United Insurance Agency, Inc., a general agent for United States Fidelity Guaranty Company, (USF & G), had arranged Hilyard's insurance needs. These coverages included general liability, work-er's compensation, automobile, fire and extended coverage. In the normal course of the prior transactions, all insurance would first be issued by means of a written binder issued by the agent who would send certificates of insurance to various loss payees. The debtor was required to furnish detailed information regarding loss experience, substituted property, payroll, and other information necessary to compute a premium. Some time after the binder had been issued, the debtor would execute a premium finance note with a bank which would pay the premium to United Insurance Agency, Inc., which, in turn, would forward the amount, less its commission, to USF & G. A formal policy would then be prepared and delivered.

In the latter part of 1984, the insurance coverage expired, and the debtor applied for renewal but was unable to negotiate a premium financing arrangement as it had in years past. Due to the fact that the parties were still negotiating, United Insurance Agency, Inc., issued an oral temporary contract of insurance binding USF & G and then sent certificates of insurance to loss payees as it had done in the past. No written binder memorandum was issued. The parties continued to negotiate until around January 25, 1985, when United Insurance Agency, Inc., determined to cancel the coverage because satisfactory arrangements had not been made for the payment of the premium. This bankruptcy immediately ensued.

Procedurally, the status of matters before the Court is unclear, but because of the significant sums involved and the importance of the legal question, and with some agreement of counsel, these procedural defects will be disregarded. The issues presented are whether United Insurance Agency, Inc., and USF & G should be granted relief from the stay to cancel all coverage for nonpayment of premiums. The companies argue, alternatively, that if relief is not granted, the Court should order the debtor to accept or reject the insurance contract as an executory contract under 11 U.S.C. § 365 and, if the contract is

assumed, that it be done promptly, that arrearages be cured and that the debtor be required to provide adequate assurance of future performance. The debtor argues that a policy of insurance, and not merely a binder, has been issued. The debtor further argues that the insurance policies are not executory, and that the companies' remedies are to file claims which will be paid under its Chapter 11 plan. The debtor suggests that the companies' claims might be entitled to an administrative priority.

There are two groups of policies and one group[1] was paid for by means of a premium finance note which has been sold back to United Insurance Agency, Inc., pursuant to the recourse agreement with the financing bank. These will be dealt with separately.

Prior to the hearing on these motions, the Court, upon application of the debtor, imposed the stay under 11 U.S.C. § 105(a) against the companies and required them to extend coverage pending a determination of these issues on the merits.

Black's Law Dictionary 213 (rev. 4th ed. 1968) defines a binder as follows:

> The memorandum of an agreement for insurance, intended to give temporary protection pending investigation of the risk and issuance of a formal policy.

> A verbal contract of insurance in praesenti, of which the insurance agent makes a memorandum temporary in its nature....; thus constituting a short method of issuing a temporary policy to continue until execution of a formal one,
> ...

Ark.Stat.Ann. § 66–3219 (Repl.1980) provides, in part, as follows:

> (1) Binders or other contracts for temporary insurance may be made orally or in writing, and shall be deemed to include all the usual terms of the policy as to which the binder was given together with such applicable indorsements as are designated in the binder, except as superseded by the clear and express terms of the binder.

> (2) No binder shall be valid beyond the issuance of the policy with respect to which it was given or beyond ninety (90) days from its effective date, whichever period is the shorter.

> (3) If the policy has not been issued a binder may be extended or renewed beyond such ninety (90) days with the written approval of the Commissioner, or in accordance with such rules and regulations relative thereto as the Commissioner may promulgate.

The facts here present an example of an oral binder consummated by the verbal agreement of the company's general agent. *See Leigh Winham, Inc. v. Reynolds Ins. Agency*, 279 Ark. 317, 651 S.W.2d 74 (1983); *Home Insurance Company v. Moyers*, 252 Ark. 51, 477 S.W.2d 193 (1972). Until the time the policy is issued, Ark. Stat.Ann. § 66–3219 (Repl.1980) supplies the terms of the policy. The Court has no evidence, for instance, of the terms of the insurance contract regarding either party's right to cancel.

Since Ark.Stat.Ann. § 66–3219 (Repl. 1980) is controlling in this case, the temporary insurance supplied to the debtor automatically lapsed ninety (90) days from its effective date of December 1, 1984. The debtor has cited no authority requiring the companies to involuntarily extend coverage to the debtor beyond the ninety (90) days. There is no evidence before the Court that other insurance is unavailable to the debtor. Therefore, the Court finds that this is an inappropriate case to invoke its equitable powers under 11 U.S.C. § 105(a) to indefinitely enjoin the insurance companies from cancelling coverage, except for a period to allow the debtor to secure other insurance coverage. *See In re Douglas*, 18 B.R. 813 (Bkrtcy.W.D.Tenn., W.D.1982).

The debtor's argument that the debt owed for the postpetition insurance protection is like the debtor-creditor relationship

---

**1.** Policy SMP030805093 — Expiration Date 3/26/86
Policy F040962108 — Expiration Date 4/01/85
Policy F035148080 — Expiration Date 5/17/85

created if the debtor had purchased a suit of clothes from a merchant on unsecured credit is unpersuasive. Equally unpersuasive is the debtor's argument that prior dealings with the debtor and United Insurance Agency, Inc., and USF & G created some type of vested right to a continuation of such relationship postpetition. The Court simply cannot envision how the equitable principle of estoppel can be a basis for requiring the insurance companies to enter into a new contract with the debtor when the insurance companies are unwilling to do so. The debtor cites no authority for this argument. Therefore, 30 days from the entry of this Memorandum Opinion and the Order of this same date, the Court's stay requiring the companies to maintain insurance coverage pursuant to 11 U.S.C. § 105(a) is dissolved. The automatic stay provided for in 11 U.S.C. § 362 is relaxed, allowing cancellation of the following temporary insurance policies:

1. 39–02745–84–3
2. RICC–048031005
3. CEP 059537380
4. RBAP–058806650

■ United Insurance Agency, Inc., and USF & G, are allowed a priority administrative claim in an amount equal to the accrued premium since the filing of the petition in bankruptcy and until cancellation of the policies.

■ Policies which were financed by a premium finance note and which are numbered F040962108 and F035148080 have expired by their own terms. USF & G shall not be required to renew these policies, except as it may choose to do so. At the time of the filing of the petition, United Insurance Agency, Inc., as agent for USF & G, had a security interest in the unearned premiums which have now been earned while the case was under advisement. *Premium Financing Specialists, Inc. v. Robert P. Lindsey, Trustee,* 11 B.R. 135 (E.D.Ark.1981); *In re Krimbel Trucking Co., Inc.,* 3 B.R. 4 (Bkrtcy.W.D.Wash., at Seattle 1979). United Insurance Agency, Inc., and USF & G, as their interest may appear, are, therefore, allowed a priority ad-

ministrative claim in an amount equal to the accrued premiums from the filing of the petition in bankruptcy until the expiration of the policies.

■ Policy No. SMP030805093 will expire on March 26, 1986. The stay as to Policy No. SMP030805093 shall not be relaxed. Debtor shall, as adequate protection under 11 U.S.C. § 362, within 30 days from the entry of the Order of this same date pay all premiums earned since the filing of the petition up to the date of this Memorandum Opinion. As further adequate protection, the debtor shall pay at least once monthly all premiums as they accrue. Neither United Insurance Agency, Inc., nor USF & G shall be obligated to renew the policy, except as it may choose to do so upon the expiration of the policy.

IT IS SO ORDERED.